Sivak Estate.

324

Argued April 17, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Paul N. Barna,* for Julia Suvak.

*William L. Jacob,* with him *C. W. Sypniewski,* for Michael Sivack.

OPINION BY RENO, J., July 17, 1947:

These are cross appeals from the final decree calculating the owelty in partition proceedings. They were consolidated and argued upon a joint record.

Decedent, Mike Sivak or Michael Sivack, died intestate on April 12, 1943, leaving negligible personal property and a parcel of real estate which is the basis of this contest. His daughter, Julia Suvak, one of the appellants, alleging that she was the sole heir, secured letters of administration on June 25, 1943. She administered the estate, and the personal estate being insufficient, paid out of her own funds the funeral bills, costs

of administration, and other items. She filed her account on April 23, 1945.

Meanwhile, on April 17, 1944, Michael Sivack, Jr., the other appellant, alleging that he was a son of decedent, filed a petition for partition of the real estate. An answer was filed denying that he was a legitimate child; testimony was taken; an opinion was rendered declaring Michael a legitimate child and that he and Julia were tenants in common; and partition was awarded. Subsequently, the real estate was allotted to Michael at his written bid of $2800.

Thereafter, Julia filed a petition praying that the fund raised in the partition proceedings be charged with the expenditures which she had made out of her own funds in the settlement of her father's estate, and for which she claimed an equitable lien. Michael objected, and petitioned for the allowance of counsel fees, costs, and expenses incurred in the partition proceedings. Intermediate proceedings, not pertinent here, ensued; testimony was taken; an auditing judge entered a nisi calculation of owelty which, upon exceptions, was modified, and became the final decree from which both parties appealed. The calculation is printed in the margin.[1]

---

[1] Calculation of Owelty.

| | | |
|---|---:|---:|
| Real Estate awarded to Michael Sivack, Jr. at .......... | | $2800.00 |
| Add net rents chargeable to Julia Suvak, .............. | | 234.50 |
| | | $3034.50 |
| To John M. Huston, Clerk of Orphans' Court, costs in partition, ...................... | $476.80 | |
| To Julia Suvak, Judgment, costs and expenses, . | 695.92 | |
| | | 1172.72 |
| Net value ..................................... | | $1861.78 |
| Less Michael Sivack, Jr's. share, ½ ................. | | 930.89 |
| He shall pay owelty as follows: | | |
| To Michael Sivack, Jr., reimbursement for Non-Pros. fees paid by him ......................... | 3.00 | |

## No. 79—Julia Suvak's Appeal.

Julia's complaint is that her so-called equitable lien was not allowed, and that the item, "To Julia Suvak, Judgment, costs and expenses $695.92" should be increased by adding $651.47, expended by her out of her own funds for her father's funeral and medical bills, the cost of administering the estate, and debts of the decedent. She had not instituted a cautionary action required by the Fiduciaries Act of June 7, 1917, as amended, §15 (a), 20 PS §521, within a year after decedent's death, and for that reason her claim was rejected. A fiduciary who uses her own funds to pay the debts of a decedent is subrogated to the rights of the creditors, but her rights are not higher than theirs, and since they would have been barred by their failure to bring actions within the period prescribed by the Fiduciaries Act, she is not entitled to payment out of the real estate. *Krick's Est.*, 342 Pa. 212, 20 A. 2d 195.

It is contended that Julia's claim is ruled by *Gibson Est.*, 153 Pa. Superior Ct. 413, 34 A. 2d 159. In that case a legatee was held to be estopped from contesting an administrator's claim, arising out of the advancement of his own funds to settle the estate, upon the ground that a cautionary suit had not been instituted within one year. The legatee had had possession of the will for nine years before the testator's death, and offered it for probate only two days before the expiration of the one year period. The concealment of the will from the administrator, who had no knowledge of its existence, was the circumstance which estopped her.

Here Julia argues that Michael is estopped because he did not assert that he was a legitimate son of the decedent until he filed his petition for partition more

To Julia Suvak, balance, viz:

| | | | |
|---|---|---|---|
| Rent due by her | $234.50 | | |
| Cash | 693.39 | 927.89 | 930.89 |

than a year after the decedent's death, and in the meantime Julia had incurred the expenditures which form the basis of her claim. Julia testified that Michael had said to her that the decedent was not his father, and that "he didn't have anything to do with it [the arrangement for the funeral] because Dad wasn't his father." Michael denied the statements. There is no explicit finding of fact by the auditing judge, possibly because the *Gibson* case was not called to his attention, or perhaps his denial of her claim indicates rejection of the testimony because it lacked credibility.[2] At all events, a favorable finding of fact which, being dependent upon the credibility of witnesses we cannot make, is required to sustain Julia's position. In its absence, there is no factual basis for the application of the doctrine of the *Gibson* case.

### No. 81—Michael Sivack's Appeal.

Michael objects to the *inclusion* of several items in the allowance "To Julia Suvak . . . $695.92", and they will be considered seriatim.

1. Included is $89.60 for the fees of witnesses called by Julia in the hearing on Michael's petition for partition. This was allowed under the Orphans' Court Partition Act of June 7, 1917, P. L. 337, §35 (a), 20 PS §1524, which provides: "The *costs* in all cases of partition . . . with a reasonable allowance to the petitioners for counsel fees, to be taxed by the court, or under its direction, *shall be paid by all the parties in proportion to their several interests.*" (Emphasis added). "The term *costs* is a comprehensive one, including in its ordinary acceptation, officer's fees, as well as the party's own charges for witnesses, where witnesses can legally

---

[2] This testimony was twice presented to the court; first in the partition proceeding before Judge TENER; the second time at the hearing before President Judge TRIMBLE to determine the owelty. Neither judge found the fact in favor of Julia Suvak, and to that extent at least there is a factual adjudication against her.

be called and examined": *Penna. R. R. Co. v. Keiffer* 22 Pa. 356, 358. The taxation of costs of the witnesses particularly the determination of the number that should be paid and the materialty of their testimony, is com-mitted to the discretion of the court below, and its de-cision will not be disturbed on appeal in the absence of evidence upon the record demonstrating an error of law in the taxation. *Hartley v. Weideman,* 28 Pa. Su-perior Ct. 50. This record reveals no error. Nor can it be said that only the costs of the successful party shall be allowed. In partition there is no "successful party" in the sense that a favorable adjudication carries with it liability of the adverse party to costs. The statute explicitly provides that the "costs . . . shall be paid by *all* the parties . . ." (Emphasis added).

2. The court allowed Julia $81.93 which she expended for installing a water heater, without which, the court found, the house could not have been rented. Appel-lant's objection to this item is not well-founded, for whether it be a repair or an improvement, it enhanced the value of the property to the extent of making it income-producing, a benefit which inured to the advan-tage of all the owners. The allowance was proper. *Huffman Est.,* 349 Pa. 18, 36 A. 2d 638; *Weiskircher v. Connelly,* 248 Pa. 327, 93 A. 1068; *Beaty v. Bordwell,* 91 Pa. 438. For the rationale supporting an allowance in partition proceedings of a gas heater which cost $732.57, see *Hahn's Est.,* 44 D. & C. 535, 546.

3. Michael objected to the allowance of $7.34 for the net premium upon a fire insurance policy upon the prop-erty which Julia paid out of the rents she received, be-cause it was in her name alone. Even so, had a fire oc-curred he would have been entitled to his share of the proceeds. "If the insurance is taken for the benefit and at the expense of all [joint owners], each is entitled to his share of the proceeds, as where the one takes out insurance on the whole, and calls on his cotenants to contribute to the payment of the premiums, or pays them

from rents of the common property": 46 C. J. S., Insurance, §1141.

4. Michael held a judgment against his father, and before instituting the partition proceeding threatened to issue execution upon it. Julia purchased the judgment with her own funds, and Michael assigned it to her. Ungraciously and inconsistently, he now contends that the judgment was not a lien on his father's real estate. He should be halted by an estoppel. Cf. 6 C. J. S., Assignments, §81 (b). But that doctrine need not be invoked. The court below properly held that it was a lien.

President Judge TRIMBLE accurately stated the factual situation, and we concur in it as well as in his legal conclusion: "On January 30, 1939 decedent's son issued a writ of scire facias to revive his judgment entered against his father on a judgment note on January 25, 1934 and service of the writ was made on the father's housekeeper at his home. This writ having issued beyond the five year period the judgment had lapsed and lost its priority but upon the issuance of the scire facias a new lien attached to all the property then owned by the judgment debtor. Therefore, at the time of decedent's death this was a valid lien against his real estate and by his death the lien was extended for a period of five years from the date of death: section 15 (g) of the Fiduciaries Act [supra]. It was a valid lien at the time the Partition proceedings were commenced in 1944 and is a valid lien at the present time against decedent's property and the daughter, as assignee, is entitled to recover the amount of the judgment and the costs of satisfaction which will be deducted in the calculation of the owelty. The case of *Cusano v. Rubolino*, 351 Pa. 41, [39 A. 2d 906], is not in point here because there is no terre-tenant involved nor is there an intervening creditor or purchaser."

To this need only be added that the purpose of the Act of June 12, 1931, P. L. 506, §1, 12 PS §876, upon which appellant relies, is expressed in its title, and,

under it, the issuance of a sci. fa. revives a judgment which has lost its lien from the date the sci. fa. is issued provided it is properly indexed in the judgment docket.

5. The calculation nisi included $350 for petitioner's counsel fees. In the final decree the item, "To John M. Huston, Clerk of Orphans' Court, costs in partition, $476.80", includes counsel fees in the sum of $200 which the court found was a reasonable fee for "services rendered for the benefit of all the parties." The services were performed under the eyes of the court below, and the exercise of its informed discretion will be disturbed only upon a clear showing of abuse. The record contains no evidential data upon which we could base a judgment, much less revise one, and we cannot hold that the court erred in reducing the fees from $350 to $200.

No. 79: Decree affirmed at appellant's costs.

No. 81: Decree affirmed at appellant's costs.

Unless the parties have otherwise agreed, the expense of printing the joint record shall be equally divided and paid by both appellants.