Lindenfelser, Appellant, *v.* Lindenfelser.

Argued November 24, 1958. Before BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

reargument refused September 9, 1959.

*David Freeman,* with him *Harry J. Liederbach,* for appellant.

*William M. Power,* for appellee.

OPINION BY MR. JUSTICE BOK, July 2, 1959:

This is the third appearance here of this case.

At 383 Pa. 424 (1956) we reversed a summary dismissal of plaintiff's request for a preliminary injunction and for the appointment of a receiver and remanded the record for a hearing, with an order to the lower court to determine all questions. A hearing was held and an adjudication filed, denying the injunction and receiver, without prejudice, since plaintiff again appealed at once, to the ultimate merits. At 385 Pa. 342 (1956), we affirmed the denial of preliminary relief.

Another hearing was then held on the merits, and an adjudication, supplemental adjudication, and final decree were filed, dismissing the complaint. Plaintiff has appealed.

Several questions have been solved along the way. Since the parties are man and wife, separated but not divorced, counsel agree that there is no case for partition of the three parcels of real estate, which are all held by the entireties. The court below also ordered defendant to account from August 15, 1954, and she did so. Counsel further agree that the parties have an

equal right to possession and use of the properties, and that defendant is entitled to proper support.

Plaintiff now argues two questions. The first is the need for an injunction and for the appointment of a receiver: the second involves the amount of support.

The properties are all in Langhorne, Bucks County, and are known as 210 South Bellevue Avenue, a five-family apartment house; 221 South Bellevue Avenue, a dwelling rented to the parties' married daughter and her family; and, adjoining 221, 111 Flowers Avenue, the matrimonial domicile and now the residence of the defendant. She manages these properties and retains the rentals for her living.

The parties separated in 1949. From his wool business they once had a substantial income, but in 1953 the business failed and plaintiff, after several years of menial labor, was making from $30 to $40 per week as a plumber's helper at the time of trial. He is now sixty-six and his wife a year older.

The record is in a parlous state. We regard the solution of the court below as basically unfair to the plaintiff because there are three valuable properties in which he has an entireties' interest but from which he is effectively excluded and from whose rental he gets nothing. He must subsist altogether on his laborer's wage.

The chancellor suggested that plaintiff or his counsel acted in bad faith by bringing suit with the motive of forcing a sale or settlement and raising a cash fund. It is true that plaintiff waited for six years before suing, but while he had his business it was natural enough to keep the profits and let defendant keep the rents. He did not sue until his business was gone and he had nothing. Then he had every right to try to reach by the only method available to him a right in property that was undeniably his.

Plaintiff had the burden of proof in seeking to redress his wrongs and he sagged under it in several important particulars. One of these was in giving evidence of the value of the properties and another was in giving evidence of their rental value, for the chancellor's findings on these points, especially the latter, stand at the base of his present trouble. He could give persuasive testimony about what the properties cost him and what he put into them, but as a wool merchant and not a real estate broker, his ideas of market value and rental value are not very useful.

The same may be said of defendant's notions of value. Her renting the properties at certain figures does not mean that those figures are the going rates. The rentals show no increase since 1949, and it is incredible that these properties and their rental value should not have advanced with the general market. This conclusion is strengthened by the rental of one entire property to defendant's daughter and family for only $75. We regard her testimony of both the income from the properties and the expense of operating them with considerable disbelief.

There should be competent testimony about rental values before there can be a practical solution of this case.

Beyond this, nothing can be made to move without a receiver when the parties are at sword's point and one of them cannot get into the properties or have a word about their rental and expense. It is regrettable to incur the expense of a receiver, but the parties have created the impasse that requires one and there is no other way to remove the obstacle to final solution.

The decision to appoint a receiver or not to is generally a matter of discretion, but it is a judicial discretion whose abuse will be corrected on appeal: *Truscott v. Yiddisher Kultur Farband*, 382 Pa. 553, 116 A. 2d

555 (1955). We consider the failure to appoint, under the circumstances of this case, as an abuse of discretion.

The law of the case has already been set by us in the first appeal, 383 Pa. 424, 119 A. 2d 87 (1956) where we said: "A reasonable interpretation of the Married Women's Property Act necessarily permits an action in equity by one spouse to protect as 'separate property' his interest therein held by them as tenants by the entireties and from the possession of which the other spouse is wrongfully excluded."

Logically, there is no "separate property" in an estate held by the entireties, since each spouse owns the whole and not an equal part, and there has been some confusion over the right of one spouse to sue the other with regard to various forms of property such as a note (*Wallaesa v. Wallaesa,* 174 Pa. Superior Ct. 192, 100 A. 2d 149 (1953)), a bank account (*Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172 (1934), and *Werle v. Werle,* 332 Pa. 49, 1 A. 2d 244 (1938)), and rents (*Wakefield v. Wakefield,* 149 Pa. Superior Ct. 9, 25 A. 2d 841 (1942), *Brobst v. Brobst,* 384 Pa. 530, 121 A. 2d 178 (1956)).

In *DeLuca v. DeLuca,* 388 Pa. 167, 130 A. 2d 179 (1957), which concerned a house and furniture bought with the balance of a joint bank account, we said: ". . . [these properties] are subject to the use and enjoyment of both parties. If they cannot live together amicably and enjoy them together, the only alternative is to account for the property and divide the proceeds equally."

Taking our conclusions in *Lindenfelser* and *DeLuca* together, we believe the modern rule to be that where husband and wife are separated but not divorced and where one of them is excluded from the exercise or enjoyment of rights inherent in an estate held by the

entireties, an accounting of the property so held may be ordered and the property or proceeds divided equally between them.

As for support, we see no competent evidence of plaintiff's financial ability beyond his wage. The court below has found that his earning power exceeds his current pay. Ordinarily the findings of a chancellor, confirmed en banc, will not be reversed if supported by competent evidence: *Pregrad v. Pregrad,* 367 Pa. 177, 80 A. 2d 58 (1951). But inferences and deductions from facts and conclusions of law can be drawn here as well as below: *Eways v. Reading Parking Authority,* 385 Pa. 592, 124 A. 2d 92 (1956); *Kelly v. Philadelphia,* 382 Pa. 459, 115 A. 2d 238 (1955). Further, we do not regard the finding as based on competent evidence. It is correct that not only property and income but earning power as well are to be considered in fixing a support order: *Commonwealth ex rel. Zehring v. Zehring,* 186 Pa. Superior Ct. 393, 142 A. 2d 397 (1958), but the time for measuring these elements is the time of the hearing, not the past: *Jones v. Jones,* 348 Pa. 411, 35 A. 2d 270 (1944).

We regard it as unreal to contend that a man who has once had enough capital to buy three houses and enough income to put his son through a private school and Harvard University would deliberately wreck his business and live on a plumber's helper's pay in order to jink his wife. The chancellor chose to dismiss evidence of which we could almost take judicial notice, namely, that after the textile business in this area almost dried up, plaintiff tried to get work and even took an examination for insurance adjuster, but that there were then nearly half a million people out of work in Pennsylvania and he was passed over for younger men. He also testified that the job of plumber's helper was temporary, until his employer could get another man.

and that he got it only because his predecessor was drafted into the Army. The chancellor found that plaintiff "has given no satisfactory explanation for his present situation." We regard his explanation, outlined above, not only satisfactory but cogent.

Since plaintiff may have lost this job by now or may have changed employment or may be out of work altogether, a further hearing on the subject of support may be necessary. Plaintiff asks us to fix the amount of support, and the rental value of properties as well, but for the reasons given above there is no competent evidence by which anyone could make firm and decent findings. Even defendant's expenses, which include care of a dog, charity, entertainment, and travel, do not seem to us to represent fairly the relative financial balance between the parties.

The case needs a fresh new look. The basic assumption must be that the three properties are held in the estate peculiar to marriage. Each party is entitled to equal use, enjoyment, and possession of them and, if necessary, this right should be enforced by proper injunctive order: see *Mower v. Mower*, 367 Pa. 325, 80 A. 2d 856 (1951). Since they are still married but estranged, they are entitled equally to the usufruct of the properties: *Schweitzer v. Evans*, 360 Pa. 552, 63 A. 2d 39 (1949); *Lindenfelser v. Lindenfelser*, supra (383 Pa. 424); *DeLuca v. DeLuca*, supra (388 Pa. 167). The defendant is entitled to proper support fixed upon evidence in accordance with law: *Kaufmann v. Kaufmann*, 166 Pa. Superior Ct. 6, 70 A. 2d 481 (1950). And the court below has the power, with jurisdiction for at least one purpose, to consider and dispose of the entire controversy: *Brobst v. Brobst*, supra (384 Pa. 530). The evidence underlying these principles should be carefully re-examined.

The decree is reversed. The record is remanded to the court below for the appointment of a receiver and for further proceedings not inconsistent with this opinion. Costs to abide the event.