## Commonwealth ex rel. Lebowitz, Appellant, *v.* Lebowitz.

Argued March 26, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

Before LOWE, J.

*John E. Landis,* for appellant.

*Desmond J. McTighe,* with him *McTighe, Brown, Weiss, Bonner & Stewart,* for appellee.

Opinion by Watkins, J., June 14, 1973:

This is an appeal by the wife-appellant, Marilyn Lebowitz, from the order of the Court of Common Pleas, Montgomery County, denying support from her husband-appellee, Leonard Lebowitz, pursuant to the Pennsylvania Civil Procedural Support Law.

The parties were married on October 27, 1956. They have three children, presently in the father's custody, Marci, age 14, Richard, age 13 and Donna, age 11, respectively, at the time of the hearing. The trouble in this family began when in 1971 the wife began showing interest in the sect known as Jehovah's Witnesses. She began studying the Bible with a member of the faith so that she could eventually become a member. The record clearly discloses that the husband was violently upset by his wife's conversion and the record supports the fact that she was forced to remove herself from the family home on two occasions because there was bitter objection to the activity in this religion. She contends that she was pushed out of the door of her home because she did not give up the Bible study as he insisted. She found refuge in a friend's home and was told she could not return until she agreed to give up the Bible study.

The second and final separation came about in October, 1972. This separation was brought about by the fact that she attended a wedding ceremony held by the Jehovah's Witnesses while her husband was away on a business trip. He became furious and ordered her to leave. He took the keys of the home and her credit cards from her pocketbook and according to her testimony put part of her clothing out on the patio. In order to get the rest of her clothing, she had to return to the home with a police escort. After separation, she lived with a friend and her family in a mobile home. While there, the husband-appellant made threats to the Cohans for giving refuge to his wife and interferring

with his marriage. Mrs. Lebowitz is still living there. She has no employment although prior to the marriage she was employed as a bookkeeper. Her husband is President of General Auto Placement, Inc., and according to his 1971 Income Tax Return his gross income was Forty-One Thousand Four Hundred Dollars ($41,-400.00). While living in the marital home, the wife had the use of a corporation automobile and was given $150.00 weekly to manage the household. Since the separation, he has given the wife only $100.00 and has taken the use of the automobile from her. She had $25.00 in her pocketbook at the time of the separation and her only asset at that time was a bank account of approximately $600.00.

The question raised in this appeal is whether the court below abused its discretion in denying support to the wife on the ground that she was not justified in leaving the marital home.

"The husband has an absolute moral and legal obligation to support his wife. [*Commonwealth ex rel. Volinski v. Volinski*, 180 Pa. Superior Ct. 348, 119 A. 2d 648 (1956).] This obligation does not arise out of debt or contract; it is an incident of the marital status imposed by the law." 18 P.L.E. §2, page 6.

"A wife who withdraws from the marriage domicile is entitled to support only if she shows that her husband's conduct justified her leaving, or that he consented to the separation. Commonwealth v. Sgarlat, 180 Pa. Superior Ct. 638, 121 A. 2d 883 (1956). But she is not held to the high degree of proof required of the husband and need not establish facts which would entitle her to a divorce; it is sufficient if she justifies living apart from her husband for any reason adequate in law. (Citing cases.)" *Commonwealth ex rel. Miller v. Miller*, 209 Pa. Superior Ct. 196, 197, 223 A. 2d 917 (1966).

A careful reading of the record shows clearly a forceable eviction of the wife from the marital domicile

because of her conversion to the Jehovah's Witness faith unless we disbelieve all the testimony of the wife and her witnesses as well as disbelieve admissions made by the husband.

It is possible to sympathize with the husband's bitterness and frustration because of his wife's interest in what he considered a strange cult, but she does have a civil right to worship God according to the dictates of her own conscience, even though it flies in the face of his own religion and traditions and his utter contempt for the sect in question.

This record clearly establishes adequate legal reasons for her withdrawal. He clearly refused her remaining or returning while she continued to study the Bible to become a member of Jehovah's Witnesses. The husband admits that the offers of reconciliation were based on the abandonment by the wife of her religious beliefs as shown by the testimony: "Q. Several weeks ago at the custody hearing, there was discussion about reconciliation. Did you not then make a condition, Mr. Lebowitz, that she would give up Jehovah's Witnesses or you wouldn't take her back. Did you make that condition then? A. I may have. Q. Have you changed your mind since? Is that what you are saying now that we are here on support? A. To a degree."

A husband must be able to prove with evidence that is clear and convincing that his wife's conduct relieved him of the responsibility of support. *Commonwealth ex rel. Korn v. Korn,* 204 Pa. Superior Ct. 153, 203 A. 2d 341 (1964). Even if we believe his testimony concerning neglect of her housework and wifely duties for Bible study which she denies, this would not be sufficient to establish a cause of divorce so as to relieve him of his support responsibility. *Commonwealth ex rel. Reddick v. Reddick,* 198 Pa. Superior Ct. 111, 181 A. 2d 896 (1962).

The evidence that he threatened to begin divorce proceedings; his admission that after she left he placed her clothes on the patio; his threats to her friends who took her in; his taking of the car keys and charge plates from her pocketbook as she was leaving; the testimony of the father-in-law that the husband told him he slapped his wife and threw her out because of the religious problem; the testimony of the people who took her in as to the threats made by the husband; all point up the fact that his whole course of conduct was to force her from the home in an attempt to obtain her renunciation of her interest in Jehovah's Witnesses.

It should be pointed out that the three children are in the custody of the father and that at the same time the action was instituted for support, a Petition for Writ of Habeas Corpus to secure custody of the three children was filed so she was seeking support for herself and the three children. The court below awarded custody of the children to the father because, from this record, it is apparent that the mother had no place to take them. If the separation continues and a support order is made so that she can establish living quarters, the matter of custody may be reconsidered because of change of circumstances.

The order of the court below denying support is reversed and the case is remanded for the purpose of determining the amount of the order.