Helen A. FASCIONE, Appellant,

v.

Daniel FASCIONE.

Helen A. FASCIONE

v.

Daniel FASCIONE, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 4, 1978.

Filed Dec. 7, 1979.

532

Arthur L. Jenkins, Jr., Norristown, for appellant at No. 1462 and for appellee at No. 1576.

C. George Milner, Philadelphia, for appellant at No. 1576 and for appellee at No. 1462.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

This matter is before us on cross appeals from a decree in equity entered by the trial court. Upon a complaint brought by Helen A. Fascione, hereinafter referred to as wife, and a subsequent counterclaim filed by Daniel Fascione, hereinafter referred to as husband, the chancellor concluded that the husband had excluded his wife from the enjoyment of certain items of personalty, and that such action constituted a misappropriation of those items. The chancellor consequently granted partition of the personal property, but not the real estate or bank accounts held by the parties as tenants by the entireties, and ordered the wife to reimburse the husband for her share of the 1976 income tax liability paid by the latter, *viz.* $2,160.13. For the reasons stated herein, we reverse in part and affirm in part.

█ Initially, it is well recognized that a chancellor's findings of fact, when supported by competent evidence, have the weight of a jury verdict. *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978); *Baker v. Zingelman,* 259 Pa.Super. 441, 393 A.2d 908 (1978); *Cardamone v. University of Pittsburgh,* 253 Pa.Super. 65, 384 A.2d 1228 (1978). "The chancellor's findings are entitled to particular weight in a case in which the credibility of the witnesses must be carefully evaluated, because he has had the opportunity to hear them and observe their demeanor on the stand." *Vento v. Vento,* 256 Pa.Super. 91, 95, 389 A.2d 615, 617–18 (1978), *quoting Stauffer v. Stauffer,* 465 Pa. 558, 567, 351 A.2d 236, 240 (1976).

With this tenet in mind, the chancellor's factual findings may be summarized as follows. The parties herein separated on March 31, 1977, after having been married some twenty years. The separation was precipitated by the wife's withdrawal from the marital domicile, an action not consented to by her husband. At the time of the separation, the two owned as tenants by entireties their home and accompanying real estate, all personalty located in the residence with the exception of personal clothing and effects, and a savings account containing a balance of $709.61. A support action

instituted by the wife resulted in an order requiring her husband to make payments of $220 per week.[1]

Subsequently, the husband moved certain pieces of furniture from the marital domicile to the home of his aunt in Delaware County, while the wife removed some of her clothing and certain place settings. He has not changed the locks on the door, but has regularly utilized a chain lock which had been installed prior to the separation.

As to the entireties bank account, the husband has made deposits and withdrawals with the result that at the time of the hearing, the balance stood at $9.61. The funds were utilized, in whole or in part, for the payment of joint obligations in connection with the dwelling house, such as taxes—amounting to $1,088.50—mortgage payments, and insurance premiums. The husband has also paid the full tax balance due to the United States Government on the 1976 income of both parties.[2]

From these facts, the court of common pleas first concluded that the husband's removal of the personalty from the marital residence constituted an offer on his part to destroy the tenancy by the entireties in the personalty. While we agree with this limited conclusion, the chancellor erred in not extending the partition to the real estate and bank accounts.

It is clear that once an estate by the entireties has been created, neither spouse, acting independently, may dispose of any portion of the estate so as to effect a severance or encumbrance of the property. *Backus v. Bac-*

1. Entry of this order necessarily implies that the court determined either that he consented to the wife's departure, or that she had an adequate reason in law which justified her living apart. *See Lebowitz v. Lebowitz*, 227 Pa.Super. 593, 595, 307 A.2d 442, 444 (1973).

2. The combined earnings of both parties in 1976 was $38,747.72. 72.7% of the earnings were attributable to the husband, and 27.3% to the wife. The income tax liability was $11,110.55 of which the wife's share, after income averaging and withholding, amounted to $2,160.13. (The preceding figures, adopted in the chancellor's findings of fact, were taken from the husband's testimony which was not disputed by the wife.)

*kus,* 464 Pa. 380, 346 A.2d 790 (1975); *Del Borrello v. Lauletta,* 455 Pa. 350, 317 A.2d 254 (1974); *Vento v. Vento, supra; Stitzinger v. Stitzinger Lumber Company, Inc.,* 187 Pa.Super. 453, 144 A.2d 486 (1958). Neither may one spouse appropriate to his or her own use the property held in such tenancy; the only appropriation that can be justified being one made in good faith for the mutual benefit of both parties to the tenancy. *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164 (1966); *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172 (1934). Nevertheless, it is equally well established that an estate by the entireties may be terminated by agreement, express or implied, of the parties. *Community Federal Savings & Loan Association v. Luckenbach,* 436 Pa. 472, 261 A.2d 327 (1970); *Brose Estate,* 416 Pa. 386, 206 A.2d 301 (1965); *Berhalter v. Berhalter, supra.*

While these severe restrictions on alienation were previously in accord with the jurisprudential concept of the unity of husband and wife, they presented serious problems when the couples separated. Our supreme court recognized these difficulties in *Berhalter v. Berhalter, supra,* when it concluded that the action of one separated spouse, in withdrawing monies in her own behalf from an entireties bank account, was tantamount to an offer by her to the husband to destroy the entireties estate. The husband's subsequent institution of suit for division of the fund constituted an acceptance of the offer and consummation of an implied agreement to divide the estate. Although this 'offer' was later recognized as a legal fiction, *Cohen v. Goldberg,* 431 Pa. 192, 244 A.2d 763 (1968); *Stemniski v. Stemniski,* 403 Pa. 38, 169 A.2d 51 (1961), the principle of an implied agreement remains viable. As we have recently reiterated in *Vento v. Vento, supra,* 256 Pa.Super. at 93–94, 389 A.2d at 617, *quoting Stemniski v. Stemniski, supra,* 403 Pa. at 42, 169 A.2d at 53:

"A violation of the rules by one's spouse appropriating the property to his own use works a revocation of the estate by the fiction of appropriation's being an offer of an agreement to destroy the estate and an acceptance of that offer when the other spouse starts suit: the property is then fit for accounting and division."

See also Backus v. Backus, supra ; Linett v. Linett, 437 Pa. 138, 262 A.2d 849 (1970); Shapiro v. Shapiro, supra; Reifschneider v. Reifschneider, 413 Pa. 342, 196 A.2d 324 (1964); Lindenfelser v. Lindenfelser, 396 Pa. 530, 153 A.2d 901 (1959).

Moreover, while many of the earlier cases involved the misappropriation of bank account funds, there is nothing unique in that species of property. Particularly apposite to the instant proceeding is Fitzpatrick v. Fitzpatrick, 181 Pa.Super. 581, 124 A.2d 709 (1956). In Fitzpatrick, the parties, husband and wife, lived together in a residence appointed with furniture and household equipment owned by the entireties and purchased with joint funds. At a time when the husband was absent from the home, the wife, aided by two accomplices, visited the residence with a truck, removed certain articles of household furniture and equipment, and stored them away, thereby excluding the husband from possession. The husband brought suit to recover the property, and suffered an adverse decision in the trial court based on the assumption that no fraudulent appropriation of the goods was established. In reversing, this court noted as follows:

> "To what other conclusion can reason come except wrongful appropriation where, as here, the defendant took possession, assumed exclusive control and deprived plaintiff of all use of the goods? Why was it necessary to surreptitiously store property which properly belonged in the common abode?
>
> The chancellor maintains that the appropriation principle applied to bank account cases cited supra is not applicable where the property or assets involved are household effects. We are again at a loss to see the distinction. Household goods, bank accounts and stocks and bonds are all personalty and all, in our opinion, are subject to the same law governing title to personalty." Id., 181 Pa.Super. at 185, 124 A.2d at 711.

Instantly, the husband has similarly moved furniture out of the marital abode. Although he testified that this

was done because he thought the items might be required if he set up an individual apartment, the result is identical; namely, an exclusion of the wife from entireties property. Such exclusion justified the partition of the personal property.

The chancellor erred, however, in holding that because the wife was not excluded from either the real estate (a decision we discuss *infra*) or the bank accounts, these could not be partitioned. In *Watkins v. Watkins*, 393 Pa. 284, 142 A.2d 6 (1958), plaintiff wife and defendant husband owned four bank accounts by the entireties. The defendant withdrew funds for his separate use from two of these accounts, and the plaintiff filed suit praying for a partition of all the accounts. In affirming per curiam the order of the lower court granting partition of all the accounts, our supreme court adopted the following language of the chancellor:

> " 'We agree with plaintiff's position. It is true that the *Berhalter* case allows a termination of the joint tenancy where one spouse has misappropriated a particular entireties fund. However, this does not indicate that only the account from which the funds were diverted can be partitioned'. . . . Therefore, the *Berhalter* rule is not merely designed to afford the injured spouse a recovery of money actually taken. Implicit in the opinion is the conviction that the injured party should not be subjected to the risk of future misappropriations by a spouse who has disregarded the tenancy's fundamental obligation. . . . [I]t would be inconsistent with the policy of the *Berhalter* case to require plaintiff to wait until funds also are diverted from the two hitherto unwithdrawn accounts before suing to protect her interest in them." *Id.*, 393 Pa. at 286–87, 142 A.2d at 8–9.

Although *Watkins* involved the misappropriation and partition solely of bank accounts, we perceive of no substantial difference between their partition and the partition of other disparate property. The clear import of the supreme court's use of the term "all property" is that upon misappropriation

of a single unit, whether it be personal property, real estate, or bank accounts, the sum total of entireties property is available for partition.

Again, in *Vento v. Vento, supra,* plaintiff wife alleged that her separated husband misappropriated certain assets in a bank account held by the parties as entireties property. She prayed for partition not only of the bank account, but of their real estate and household furnishings. The chancellor granted the petition, and this court, per Hoffman, J., affirmed. Although the husband contended that he did not exclude the wife from either the residence or its furnishings, we noted that,

> "[t]his contention ignores the rule that once misappropriation of property held by both spouses has been established, 'all property of the parties held by the entireties is affected, not merely the unit that has been improperly drawn upon.' *Stemniski,* supra, 403 Pa. at 42, 169 A.2d at 53." *Id.,* 256 Pa.Super. at 96, 389 A.2d at 618.

The rationale of allowing the total partition of all bank accounts upon the misappropriation of one applies equally here; it would be injudicious to subject the injured party to the risk of future misappropriations by a spouse who has disregarded the tenancy's fundamental obligation. The wife here prayed for the partition of all property, both real and personal, and such partition should have been allowed.

The wife next argues that the court erred in requiring her to reimburse her husband in the amount of $2,160.13. The facts relating to this claim are sparse. The husband testified that in the spring of 1976, the couple quarreled over the wife's tax liability for the 1975 tax year. The latter earned a separate income from which income tax was withheld, but the withholding was premised on that being the sole income taxed. When added on to the husband's income for the purposes of filing a joint return, it was taxed at a substantially higher rate which yielded a proportional tax liability greater than the amount withheld. It was never made explicit in the testimony what arrangements were finally made for the 1975 return, although the wife testified that

her husband did not ask her to pay any balance due on that return. In the spring of 1977, following the parties' separation in March, the husband again calculated his income tax adding on the wife's adjusted gross income of $10,578 to his own. The final tax owed, by his calculations, amounted to $11,110.55, of which his wife's portion, again according to his figures, was $4,410.30.[3] The wife admitted signing the joint tax return, but testified that her husband was going to pay the entire amount (N.T. 45), and that he had not requested her to reimburse him for any portion of the tax liability.

Unfortunately, we are provided with little assistance in deciding this matter. The opinion of the chancellor merely orders the wife to pay the prayed for amount with no discussion whatever. The briefs of both parties are equally unenlightening (indeed, the husband's brief fails to even address the issue in his argument). Moreover, our research has uncovered no case directly on point. Nevertheless, we have little hesitation in rejecting the husband's claim for reimbursement. When he paid the whole of the 1976 obligation, there was no agreement, express or implied, that his wife would contribute to that payment. In a similar situation concerning the 1975 tax return, the wife neither contributed, nor, by her uncontradicted testimony, was asked to contribute anything. As the payment came subsequent to both the separation and an earlier disagreement on contribution, it should have been apparent that some precautions were in order. Had the husband desired a certain level of contribution, it would have been a simple matter to request his wife to sign an agreement to that effect, or at least to indicate to her that such repayment was expected. Our decision might be different had the wife made a contribution toward the payment of the 1975 tax liability, thus arguably establishing a type of implied contract. Such was not the case, however, and we cannot and will not manufacture an agreement between the parties.

3. Because we hold that the wife has no obligation to compensate the husband for *any* of the funds expended for tax purposes, we need not verify the accuracy of these figures provided during the husband's testimony.

The husband finally argues that because the trial court found that no wrongful exclusion had taken place, the wife should indemnify him for mortgage, tax, and maintenance payments. As we find that there was indeed a wrongful exclusion, we must, at least in part, disagree. To reiterate, the pertinent testimony is as follows. At the time the wife left the marital domicile, she retained a key to the front door. The husband did not change the locks subsequent to her departure, but he did employ an existing chain lock when he was absent from the house. He justified its use by noting that he was frequently away from home on business. The wife testified that she attempted at least three times to return to the house to gather some personal items, but was frustrated each time by the lock when her husband was not present.

We see little difference between changing the locks on a house and utilizing a manner of locking the door which effectively precludes entry to one with a key. This determination is quite separate from the resolution of the partition question decided *supra*. There, the partition of the real estate was undertaken as a necessary and concomitant action derived from the husband's exclusion of the wife from the bank account. The instant issue is decided solely on the basis of the husband's actions with respect to the real estate itself. Because the husband wrongfully excluded the wife from the marital domicile and retained exclusive possession for himself, we cannot equitably require the wife to now contribute funds for the maintenance of the structure. Mortgage payments, however, stand on a different footing, as they increase the equities of both parties regardless of the exclusion of the wife. *See Hiras v. Hiras*, 73 D. & C.2d 759 (C.P. Lycoming 1974); *Wallick v. Wallick*, 58 D. & C.2d 286 (C.P. York 1972). Thus, the husband should properly be reimbursed the amount of the wife's portion of the mortgage payment, with such amount to be determined by the chancellor.

The order of the court of common pleas is therefore affirmed in part, reversed in part, and remanded for further action consistent with this opinion.

SPAETH, J., files a concurring and dissenting opinion.

SPAETH, Judge, concurring and dissenting:

For the reasons stated in the majority opinion, I agree that the wife is entitled to a partition of all realty and personalty owned by the parties as tenants by the entireties. I also agree that the husband is not entitled to reimbursement from the wife for his partial discharge of her 1976 income tax liability, but as to this, my reasons are different from the majority's. The husband testified at trial that he

> tried very hard to do two things. One thing was to get [my wife] to acknowledge her [tax] liability and to make funds available to meet that obligation. The other thing I tried to do was to get a joint tax return executed by [my] wife.

Record at 112a.

Still, there is no evidence that the wife did "acknowledge" her tax liability in the sense of agreeing to reimburse the husband;[1] her signature on the joint tax return did not constitute such an agreement. Nor is there evidence that the husband was under legal obligation to pay the wife's taxes; he could have filed a separate return. In these circumstances, the husband failed to show that his partial discharge of the wife's income taxes was anything other than volunteered.

I disagree with the majority's disposition of the husband's claim for reimbursement from the wife for her pro rata

1. I wish to note my disagreement with the majority's statement that the wife testified that the "[husband did] not request her to reimburse him for any portion of the tax liability." At 1027. The wife testified that she did "not recall him asking [her] to." Record at 75a. Nothing turns on this difference, however, for evidence that one does not recall a request for reimbursement is not evidence that one agreed to make reimbursement.

share of the mortgage, tax, and maintenance expenses connected with the marital domicile.[2] The majority says that

> [b]ecause the husband wrongfully excluded the wife . . we cannot equitably require the wife to now contribute funds for . . . maintenance. . . . Mortgage payments, however, . . . increase the equities of both parties regardless of the exclusion of the wife. . . Thus, the husband should properly be reimbursed the amount of the wife's portion of the mortgage payment . . . .

At 1028.

In my opinion this disposition is (1) premature, and (2) improperly related to a finding by the majority that by using a chain lock, the husband excluded the wife from the marital domicile.

–1–

On remand, the partitioning of the marital domicile will proceed according to Pa.R.C.P. 1551 *et seq.* Incident to the partition the lower court will be obliged to file another adjudication, which should include findings of fact concerning "the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes, rents or other amounts paid, services rendered, liabilities incurred or benefits derived in connection therewith or therefrom . . ." Pa.R.C.P. 1570(a)(5). The need for such an adjudication is clear. In the adjudication that gave rise to the present appeal, the lower court, after denying the wife's request to partition the marital domicile, simply concluded that "[s]ince the [husband] has continued to have the exclusive use and enjoyment of the entireties real estate, the [wife] is not

---

2. It should be noted that the discussion that follows concerning the wife's liability for expenses related to the marital domicile has no bearing on the foregoing discussion concerning her income tax liability. The wife's liability on the former expenses arises as an incident to the partition of realty held by the parties as tenants by the entireties. The husband's claim against the wife for his partial discharge of her income taxes constitutes no more than a claim for a personal debt.

obligated to reimburse him for any sums expended by the [husband] in the upkeep and maintenance thereof." Record 148a. The court therefore made no findings of fact or conclusions of law regarding the specific items for which the husband claimed reimbursement, *i. e.*, mortgage payments, insurance premiums, real estate taxes, and major plumbing repairs.

I have little doubt that when the lower court files its adjudication pursuant to Pa.R.C.P. 1570(a)(5), it will find that the husband is entitled to reimbursement from the wife for a proportionate share of the mortgage payments and homeowners' insurance premiums. *See Weiskircher v. Connelly,* 248 Pa. 327, 93 A. 1068 (1915), and *Sivak Estate,* 161 Pa.Super. 323, 53 A.2d 858 (1947), *aff'd,* 359 Pa. 194, 58 A.2d 456 (1948) (upon the partition of realty a tenant in common is entitled to an equitable charge against his co-tenants if he has paid a disproportionate share of the mortgage or fire insurance on the realty). The court may also find that the husband is entitled to reimbursement from the wife for a proportionate share of the real estate taxes, as well as of the cost of the plumbing repairs, if those repairs produced a benefit that inured to the wife's benefit. *See Huffman Estate,* 349 Pa. 18, 21, 36 A.2d 638, 639 (1944). On the wife's side, I have little doubt that the court will find that the wife is entitled to one-half of fair rental value of the marital domicile for at least part of the period it has been in the husband's exclusive possession. *See, e. g., Linett v. Linett,* 437 Pa. 138, 262 A.2d 849 (1970); *Reifschneider v. Reifschneider,* 413 Pa. 342, 196 A.2d 324 (1964); *Lindenfelser v. Lindenfelser,* 396 Pa. 530, 153 A.2d 901 (1959).[3] The fact that the husband has occupied the house rather than rented

**3.** Even though the wife did not explicitly request one half of the fair rental value of the marital domicile in her complaint, but instead requested "general and equitable relief as is necessary," Record at 59–6a, I do not believe that this claim is waived. *See generally Beck v. Beiter,* 146 Pa.Super. 114, 22 A.2d 90 (1941); *Hoog v. Diehl,* 134 Pa.Super. 14, 3 A.2d 187 (1938). Her complaint alleged that the husband has been in exclusive possession of the marital domicile since April 15, 1977; the evidence at trial supported this allegation; and the lower court in its adjudication so found.

it to third parties in no way affected the wife's right to participate in the rental value of the property. *Cornelius v. Cornelius*, 104 Pa.Super. 455, 160 A. 150 (1932). *Cf. Search Estate*, 160 Pa.Super. 488, 52 A.2d 232 (1947) (tenant in common liable to co-tenants for his exclusive possession of jointly owned residence).

Given the fact, however, that so far the lower court has filed no adjudication pursuant to Pa.R.C.P. 1570(a)(5), and has therefore made no findings on any of these matters, I submit that the orderly, and proper, procedure for us to follow is simply to vacate the order of the lower court disallowing the husband's claims against the wife for reimbursement for payments related to the marital domicile, and to remand with directions that the lower court conduct further proceedings as required by Pa.R.C.P. 1551 *et seq.*

–2–

As noted, the majority says that

[b]ecause the husband wrongfully excluded the wife . . we cannot equitably require the wife to now contribute funds for . . . maintenance . . . . .

At 1029.

This implies that if the husband had not wrongfully excluded the wife, we could equitably require the wife to contribute funds for maintenance; in other words, that the wife's liability for maintenance, and I should add, the real estate taxes, depends upon whether she has been wrongfully excluded from the domicile.

Since the majority has found that the husband's misappropriation of the furniture (which was held by the parties as tenants by the entireties) constituted an offer to destroy the parties' entireties estates in all personalty and realty, I am puzzled why the majority believes that the wife's rights or liabilities in the marital domicile are affected by whether or not she has been wrongfully excluded from it. I submit that whether or not the wife was wrongfully excluded, she is entitled to partition of the marital domicile, and that the equitable charges against each party should be determined, not by the nature of the wife's departure from the domicile,

but by the husband's exclusive "use and occupancy of the property," the amount and nature of the "taxes, rents or other amounts paid" by the husband, and by the "services rendered, liabilities incurred or benefits derived in connection" with or from the property. Pa.R.C.P. 1570(a)(5).

The only reason that the issue of the wife's exclusion from the marital domicile is important is that if she was excluded, the exclusion might establish the date from which the equitable charges between the parties began to accrue. Normally, "anytime either a husband or wife contributes towards the purchase of entireties property [his or her] contribution is presumed to be a gift to the other." *Butler v. Butler*, 464 Pa. 522, 528, 347 A.2d 477, 480 (1975). *See also DiFlorido v. DiFlorido*, 459 Pa. 641, 331 A.2d 174 (1975); *Peoples Savings & Dime Bank & Trust Co. v. Scott*, 303 Pa. 294, 298, 154 A. 489, 490 (1931) ("Money expended by a wife for the benefit of the home, of which she is a member, cannot be recovered from the husband, in the absence of some understanding as to repayment . . ."). Such a presumption, however, does not obtain once a husband and wife separate, and one of them begins to misappropriate entireties property. The husband's removal of the furniture constituted a misappropriation. However, was that the first misappropriation, so that the equitable charges between the parties began to accrue then? If the husband excluded the wife from the marital domicile, that too constituted a misappropriation. In deciding when the equitable charges between the parties began to accrue, therefore, it is necessary to know whether the husband excluded the wife before he removed the furniture.

Accordingly, on remand I should also direct the lower court to make further findings concerning the husband's exclusion of the wife from the marital domicile. The lower court concluded that the wife was not excluded, and based its conclusion upon the following findings of fact: The husband travels extensively incident to his employment. After the separation, he did not change the door locks on the dwelling, although he has regularly used a chain lock on the

front door in addition to the regular door lock that existed prior to the parties' separation. On a number of occasions following the separation, the wife went to the dwelling, but when she encountered the chain lock she made no further efforts to gain admission. Record at 146a–47a. The majority, relying on these same findings of fact, concludes that the wife was excluded. At 1027–1028. I believe that the lower court's findings by themselves, are viewed apart from the rest of the record, are not sufficient to show that the wife was excluded. I agree that there was other testimony that could support a finding of exclusion. However, the lower court has not discussed this other testimony, and in the absence of findings concerning its credibility, I am unwilling to hazard a determination of whether the wife was, or was not, excluded, and if she was, when she was.

I should therefore remand for further proceedings consistent with this opinion.