JEANNE GREENE SNOWA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snowa v. Commissioner
Docket No. 9553-93
United States Tax Court
T.C. Memo 1995-336; 1995 Tax Ct. Memo LEXIS 331; 70 T.C.M. (CCH) 163; July 25, 1995, Filed *331 Decision will be entered for respondent. Jeanne Greene Snowa, pro se. Amy Dyar Seals, for respondent. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the year 1989 in the amount of $ 21,037. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue to be decided is whether recognition of any portion of the gain from the sale of petitioner's principal residence in 1989 is deferred under section 1034. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time the petition was filed, petitioner Jeanne Greene Snowa resided in Jamestown, North Carolina. On November 15, 1989, petitioner and her ex-husband, Willis I. Spivey (Mr. Spivey), sold their jointly owned home located in the Richland Community in South Carolina (the Richland residence or petitioner's old residence) for the sale price of $ 380,000. Petitioner *332 and Mr. Spivey paid closing costs on the sale of the Richland residence in the amount of $ 25,218.41, of which $ 1,331.41 was attributable to property taxes. A portion of the purchase price was paid by a transfer from the purchaser to the sellers of lots valued at $ 130,000. The balance of the purchase price was paid in cash. The cash received was applied to pay off a first mortgage in the amount of $ 97,794.42 and another debt in the amount of $ 28,928.36. The net cash proceeds remaining after payment of the closing costs, mortgage, and other debt equaled $ 98,058.81. Petitioner and Mr. Spivey were divorced in 1989 about the time of the sale of their Richland residence. Petitioner filed her 1989 Federal income tax return as a single individual. On Form 2119 attached to her 1989 Federal income tax return, petitioner reported her one-half share of the proceeds and gain from the sale of the Richland residence as follows: Selling price
$ 190,000 Expense of sale [1]
(11,944)
Amount realized
$ 178,056 Basis of home
(108,538)
Gain on sale
$ 69,518 *333 On the Form 2119, petitioner reported that she intended to replace the residence and, therefore, did not recognize the gain in 1989. On November 16, 1989, petitioner purchased a home located at 511 Horseshoe Drive in Seneca, South Carolina (the Seneca house) for $ 85,000. Petitioner paid cash for the Seneca house with proceeds she received from the sale of the Richland residence. The Seneca house was sold on May 29, 1991, and was not a replacement residence within the meaning of section 1034. [1]
During 1991, petitioner married Henry Lin Snowa (Mr. Snowa). On March 14, 1991, petitioner and Mr. Snowa purchased a residence located at 4703 Weston Place in Jamestown, North Carolina (the Jamestown residence or petitioner's new residence). The contract sales price of the Jamestown residence was $ 177,250. In addition, petitioner and Mr. Snowa incurred $ 2,107.85 in closing costs. The purchase price and the closing costs totaled $ 179,357.85 ($ 177,250 + $ 2,107.85). Petitioner and Mr. Snowa were *334 credited with $ 163.17 for payment of local taxes. The balance of the purchase price and closing costs was paid with $ 17,725 of earnest money, $ 76,469.68 in cash at closing, and a mortgage of $ 85,000. [2] The purchase price, closing costs, and other expenses resulted in a total cost of $ 180,668 to petitioner and Mr. Snowa for the Jamestown residence. Petitioner and Mr. Snowa were jointly and severally liable for the $ 85,000 mortgage, and the Jamestown residence was titled jointly in the names of petitioner and Mr. Snowa. On Form 2119 attached to their 1991 joint Federal income tax return, petitioner and Mr. Snowa *335 reported the purchase of the Jamestown residence as replacement of the Richland residence. They reported a total cost of $ 180,668 for the Jamestown residence, which exceeded the $ 178,056 reported as petitioner's amount realized on the sale of the Richland residence. A worksheet computing the adjusted basis of the Jamestown residence was attached to the return. The following statement, signed by petitioner and Mr. Snowa, appeared on the worksheet: "We agree to reduce the basis of the new home by the gain from selling the old home." On audit respondent determined that petitioner's share of the cost of the new residence was $ 90,334 ($ 180,668 / 2), and therefore her cost of the new residence was less than her share of the adjusted sales price of the old residence ($ 178,056), and therefore the gain on the sale of the old residence ($ 69,518) must be recognized as a taxable gain for the 1989 taxable year. OPINION Generally, sections 1001 and 61 require a taxpayer to recognize in the year of the sale gain realized on the sale of property. Section 1034, however, allows a taxpayer, in certain circumstances, to defer recognition of gain realized on the sale of the taxpayer's principal *336 residence. Under section 1034, if the taxpayer purchases a new principal residence within the replacement period, [3] the taxpayer will recognize gain on the sale only to the extent that the taxpayer's "adjusted sales price" of the old residence exceeds the taxpayer's cost of purchasing the new residence. Sec. 1034(a). The adjusted sales price is the amount realized (selling price minus selling expenses) reduced by any expenses of fixing up the residence preparatory to sale. Sec. 1034(b). Thus, if the cost of the new residence equals or exceeds the adjusted sales price of the old residence, the entire gain will be deferred. If the cost of the new residence is less than the adjusted sales price of the old residence, gain will be recognized to the extent of the difference. Sec. 1.1034-1(a), Income Tax Regs. The deferral of the gain is accomplished by reducing the basis of the new residence by the amount of gain not recognized on the sale of the old residence. Sec. 1034(e). *337 Generally, the taxpayer must own both the old and the new residence, and the requirement that the taxpayer purchase the new residence is not satisfied if someone other than the taxpayer takes title to the new residence. Marcello v. Commissioner, 380 F.2d 499, 502 (5th Cir. 1967), affg. on this issue T.C. Memo. 1964-299 (gain recognized where title to new residence was placed in the name of the taxpayer's mother); May v. Commissioner, T.C. Memo. 1974-54 (gain recognized where title to new residence was placed in the name of the taxpayer's daughter). Generally, under section 1034, if title shifts from the taxpayer to someone other than the taxpayer, nonrecognition is denied. Marcello v. Commissioner, supra.Maintaining continuity of title is a key to receiving nonrecognition treatment under section 1034. See Starker v. United States, 602 F.2d 1341, 1351 (9th Cir. 1979). In the case where a husband and wife sell their principal residence and timely purchase a new principal residence, section 1034(g) provides a limited exception to *338 the ownership and purchase requirement as between the spouses. Section 1034(g) provides: (g) Husband and Wife. -- If the taxpayer and his spouse, in accordance with regulations which shall be prescribed by the Secretary pursuant to this subsection, consent to the application of paragraph (2) of this subsection, then -- (1) for purposes of this section -- (A) the taxpayer's adjusted sales price of the old residence is the adjusted sales price (of the taxpayer, or of the taxpayer and his spouse) of the old residence, and (B) the taxpayer's cost of purchasing the new residence is the cost (to the taxpayer, his spouse, or both) of purchasing the new residence (whether held by the taxpayer, his spouse, or the taxpayer and his spouse); and (2) so much of the gain on the sale of the old residence as is not recognized solely by reason of this subsection, and so much of the adjustment under subsection (e) to the basis of the new residence as results solely from this subsection shall be allocated between the taxpayer and his spouse as provided in such regulations.
This subsection shall apply only if the old residence and the new residence are each used by the taxpayer and his *339 spouse as their principal residence. In case the taxpayer and his spouse do not consent to the application of paragraph (2) of this subsection then the recognition of gain on the sale of the old residence shall be determined under this section without regard to the rules provided in this subsection. * * * [Emphasis added.]
Petitioner argues that, since she and Mr. Snowa agreed to reduce the basis in the Jamestown residence by the amount of petitioner's gain from the sale of the Richland residence, section 1034(g) permits her to defer recognition on the sale of the Richland residence. Respondent asserts that the flush language of section 1034(g) and the applicable regulations require that the old residence and the new residence are each to be used by the taxpayer and his same spouse as their principal residence. Sec. 1.1034-1(f)(1), Income Tax Regs.
Petitioner contends that section 1034(g) does not require the old residence and the new residence to be used by the taxpayer and the same spouse. [4] To the contrary, we think the words "the taxpayer and his spouse" are used consistently throughout section 1034(g). As used in the flush language, the words "the taxpayer and *340 his spouse" refer to the same taxpayer and same spouse who are required to sign the consent to the adjustment to the basis in the new residence. As such (except where one spouse dies), section 1034(g) applies only if both spouses who sign the consent have used both the old residence and the new residence as their principal residences. Section 1.1034-1(f)(1), Income Tax Regs., provides: (f) Husband and wife. (1) If the taxpayer and his spouse file the consent referred to in this paragraph, then the "taxpayer's adjusted sales price of the old residence" shall mean the taxpayer's, or the taxpayer's and his spouse's, adjusted sales price of the old residence, and the "taxpayer's cost of purchasing the new residence" shall mean the cost to the taxpayer, or to his spouse, or to both of them, of purchasing the new residence, whether such new residence is held by the taxpayer, or his spouse, or both (section 1034(g)). Such consent may be filed only if the old residence and the new residence are each used by the taxpayer and his same spouse as their principal residence. * * * [Emphasis added.]
*341 Despite the flush language of section 1034(g) and the long-standing regulation quoted above, petitioner contends that she followed the 1989 Instructions for Form 2119, Sale of Your Home. [5] Specifically, petitioner says she relied on the language: "If the old home was owned by only one spouse, but you and your spouse own the new home jointly, you and your spouse may elect to divide the gain and the adjusted basis." Those instructions, however, clearly state that, in such situation, "you both must * * * [u]se the old and new homes as your main homes". *342 Petitioner also claims that Publication 523, Tax Information on Selling Your Home, for use in preparing 1991 returns, also supports her position. The publication, however, states: You or your spouse may have owned the old home separately, but title to the new one is in both your names as joint tenants. * * * In these cases, the gain from the sale of the old home can be postponed. The postponed gain, which reduces the basis of the new home, can be divided between you and your spouse if both of you meet the following requirements: 1) You used the old home as your main home and you use the new home as your main home. * * * [Emphasis added.]
Mr. Snowa never used the Richland residence as his main home. Petitioner and Mr. Snowa simply do not fit within the language of section 1034(g), its regulations, or the examples of its operation as given in Publication 523 itself. Petitioner's situation here is more akin to that where two individuals sell their separate old principal residences and then marry and purchase a new principal residence together. Publication 523 gives the following explanation and example: Separate homes replaced by single home. If you and *343 your spouse had two separate gains from the sales of homes that had been your separate main homes before your marriage, you can postpone the tax on both gains. You must jointly purchase a new replacement home, and one-half the amount of the cost of the new home must be at least as much as the adjusted selling price of each of your old homes. Each spouse must individually satisfy the requirements for postponing gain. Each spouse's share of the cost of the new home must be equal to or greater than the adjusted sales price of his or her old home. Example. You sold your old home in April 1991 for an adjusted sales price of $ 90,000. Your spouse sold her old home in June of that year for an adjusted sales price of $ 110,000. You each realized a gain from your sale. Before the end of 1991, you jointly purchased a new replacement home at a cost of $ 200,000. Tax on your gain is postponed, since you are treated as purchasing a replacement home for $ 100,000 (1/2 of $ 200,000). There is tax on $ 10,000 of your spouse's gain at the time of the sale, the amount by which the adjusted sales price of her former home is more than her $ 100,000 share of the cost of the replacement home.
*344 Here, since Mr. Snowa did not have a prior principal residence and had no gain to defer, petitioner is trying to defer all of her gain against 100 percent of the cost of the new principal residence which she owns jointly with Mr. Snowa. That she cannot do. Thus, petitioner may defer the recognition of her gain on the sale of the Richland residence only if she satisfies the requirements of section 1034(a). Petitioner will recognize gain to the extent that her adjusted sales price of the Richland residence exceeds her cost of purchasing the Jamestown residence. Petitioner's adjusted sales price for the sale of her interest in the Richland residence was $ 178,056. [6] See Murphy v. Commissioner, 103 T.C. 111, 115-116 (1994). The taxpayer's "cost of purchasing the new residence" means the total of all amounts which are attributable to the acquisition, construction, reconstruction, and improvements constituting capital expenditures made during the replacement period. Sec. 1.1034-1(b)(7), Income Tax Regs.Section 1.1034-1(c)(4)(i), Income Tax Regs., provides: The taxpayer's cost of purchasing the new residence includes not only cash but also any indebtedness *345 to which the property purchased is subject at the time of purchase whether or not assumed by the taxpayer (including purchase-money mortgages, etc.) and the face amount of any liabilities of the taxpayer which are part of the consideration for the purchase. Commissions and other purchasing expenses paid or incurred by the taxpayer on the purchase of the new residence are to be included in determining such cost. * * *
Respondent determined that petitioner's cost of purchasing her *346 interest in the Jamestown residence was $ 90,334, one-half of the total cost of $ 180,668. Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner concedes that she has not established that she provided more than half of the cash paid in the purchase. Additionally, petitioner is entitled to include only half of the amount of the mortgage in her cost of purchasing the residence. Petitioner argues, however, that the entire amount of the mortgage should be included in her cost because the lender could require her to pay the full amount of the debt. Petitioner fails to recognize that, although the lender could enforce the obligation against one of the joint and several debtors, in such event, the debtor who pays the debt would have the right to seek contribution from the nonpaying debtor. Grimes v. Grimes, 267 S.E.2d 372 (N.C. Ct. App. 1980). The right to contribution is unaffected by the marital relationship of the parties to a note. Id.
Petitioner argues that she took legal title to the new residence, and made *347 the mortgage, jointly with Mr. Snowa in order to avoid the unnecessary expense of documenting two transfers. Petitioner contends that she could have acquired the property in her name only, with or without Mr. Snowa as a guarantor of the mortgage, and could have subsequently transferred an interest in the property to her husband. [7] She contends that, in such case, she would have obtained the full benefit of nonrecognition under section 1034. However, that was not done. The Court must decide the case on what was in fact done and not on what petitioner could have but did not do. Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974). *348 Petitioner's adjusted sales price for her half interest in the Richland residence was $ 178,056 and her cost of purchasing her half interest in the Jamestown residence was $ 90,334. Since the difference, $ 87,722, exceeds the amount of her gain, $ 69,518, none of the gain is deferred under section 1034, and petitioner must recognize the entire gain in 1989. Based on the foregoing, Decision will be entered for respondent. Footnotes
1. The closing costs were properly reduced by the amount of the property taxes and divided by 2 in arriving at the expense of sale ($ 25,218.41 - $ 1,331.41 = $ 23,887 / 2 = $ 11,943.50).↩
1. See sec. 1034(c)(4)↩.
2. Although the Seneca residence was sold after the closing date of the purchase of the Jamestown residence, the parties have stipulated that petitioner used the proceeds from the sale of the Seneca residence to purchase the Jamestown residence. The record does not establish the amount of the proceeds from the sale of the Seneca residence that was available for the purchase of the Jamestown residence.↩
3. The replacement period begins 2 years before and ends 2 years after the sale of the old residence. Sec. 1034(a)↩.
4. Petitioner also makes a semantical argument that "same spouse" does not mean the very same or the selfsame spouse, but means only alike in kind, quality or degree. However, we do not think that Congress intended to treat spouses as fungible goods.↩
5. The sources of authoritative law in the tax field are the statute and regulations and not informal publications and tax forms. Dixon v. United States, 381 U.S. 68, 73 (1965); Adler v. Commissioner, 330 F.2d 91, 93 (9th Cir. 1964), affg. T.C. Memo. 1963-196; Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979); Green v. Commissioner, 59 T.C. 456, 458↩ (1972).
6. Petitioner stipulated that her share of the proceeds from the sale of the Richland residence was $ 178,056 (one-half of the adjusted sales price of $ 356,112). In her answering brief, petitioner asserted for the first time that her share of the proceeds from the sale of the Richland residence was limited to the net cash proceeds or $ 98,058.81. That assertion is contrary to the parties' stipulation and fails to take into account petitioner's share of the expenses, mortgage, and other debt satisfied with the remainder of the cash paid.↩
7. In such a case, however, petitioner would have to show that any money paid by Mr. Snowa for the property was a gift or a loan of the money to petitioner, and that she was not legally obligated to transfer the interest to Mr. Snowa. Furthermore, if Mr. Snowa were merely a guarantor of the mortgage, petitioner would have borne the entire burden of the liability. In the event the lender were to collect from Mr. Snowa as a guarantor, Mr. Snowa would have the right to recover the full amount from petitioner. N.C. Gen. Stat. sec. 26-3.1↩ (1986). Therefore, in such a situation, petitioner's cost of the new residence would have included the entire amount of the loan.