T.C. Memo. 1996-132


UNITED STATES TAX COURT


MARTIN FELDMAN AND LYNNE Z. GOLD-BIKIN, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 27086-93.                    Filed March 18, 1996.


Barry H. Frank, for petitioners.

Joellyn R. Cattell, for respondent.


MEMORANDUM OPINION

HAMBLEN, Chief Judge:  Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1988 in the amount of $31,700 and an addition to tax under section 6653(a)(1) in the amount of $1,585.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the

1988 taxable year, and Rule references are to the Tax Court Rules of Practice and Procedure.

References to petitioner husband are to Martin Feldman, and references to petitioner wife are to Lynne Z. Gold-Bikin.  After concessions,[1] the sole issue for decision is whether petitioners are entitled to defer any of the gain realized by petitioner husband on the sale of his former residence.

## Background

This case was submitted fully stipulated pursuant to Rule 122.  The stipulation of facts and the attached exhibits are incorporated by this reference, and the facts contained therein are found accordingly.  Petitioners resided in King of Prussia, Pennsylvania, at the time the petition was filed in this case.

Petitioners timely filed a joint Federal income tax return for the year 1988 with the Philadelphia service center using the cash receipts and disbursements method of accounting.

Petitioners were married on June 28, 1987.  At the time of their marriage, petitioner husband owned a house in Wyndmoor, Pennsylvania (the Wyndmoor property), and petitioner wife owned a house in King of Prussia, Pennsylvania (the King of Prussia property).  On August 16, 1988, petitioner husband sold the Wyndmoor property for an adjusted sale price of $340,798.70 (contract sale price of $365,500 less $24,702.30 for settlement

_____

[1]Petitioners concede that the negligence penalty is applicable to any deficiency determined in this case.

charges to seller).  Petitioner husband's adjusted basis in the Wyndmoor property was $234,289 (rounded).  Accordingly, petitioner husband realized $106,509 gain on the sale of the Wyndmoor property (the adjusted sale price of $340,798 less the adjusted basis of $234,289)

On February 21, 1989, petitioner wife transferred the ownership of her King of Prussia property to herself and her husband for consideration of $1.  The outstanding principal balance on the mortgage on the King of Prussia property on February 21, 1989, was $140,806.  Thereafter, petitioners started a major renovation project on the King of Prussia property.

On July 24, 1989, petitioners executed an agreement (the private agreement) between themselves that provided, in pertinent part, as follows:

1.  Wife owns a property at 307 Hughes Road, King of Prussia, Pennsylvania, on which there is a $155,000[2] mortgage due and owing to GMAC.

2. Wife intends to transfer ownership of one-half of the said property to Husband in exchange for Husband's assumption of one-half of the mortgage balance on which he agrees he will be jointly and severally liable.

3. Husband intends to sell his residency in Wyndmoor and the parties agree that all of the proceeds of the said sale will be utilized to do major improvements to what will be the marital residence at 307 Hughes Road.

---

[2]The parties have stipulated that the correct outstanding balance of the mortgage on the King of Prussia property was $140,806.

Neither the mortgage nor the promissory note held by the lending institution was changed to reflect petitioner husband's joint liability for the mortgage on the King of Prussia property.

Renovations and restorations were made to the King of Prussia property in the total amount of $229,472 within the 2-year replacement period permitted by section 1034(a) before and after the date of the sale of the Wyndmoor property. The renovation and restoration payments for the King of Prussia property qualify as payments made for the partial reconstruction of a replacement residence. All renovation and restoration payments for the King of Prussia property were paid from a joint checking account in the names of petitioners, or from a checking account in the name of petitioner wife. A substantial portion of the renovations and restorations of the King of Prussia property was made before petitioners had executed the written agreement between themselves on July 24, 1989.

## Discussion

Under the general rule of section 1001(c),[3] taxpayers are ordinarily required to recognize their entire gain on the sale of property. Secs. 61, 1001. However, section 1034, captioned

---

[3]SEC. 1001.  DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS.

   (c) Recognition of Gain or Loss.--Except as otherwise provided in this subtitle [subtitle A, relating to income taxes], the entire amount of the gain or loss, determined under this section, on the sale or exchange of property shall be recognized.

"ROLLOVER OF GAIN ON SALE OF PRINCIPAL RESIDENCE", requires taxpayers, in certain circumstances, to defer recognition of gain realized on the sale of their principal residence.  Under section 1034, if a taxpayer sells a principal residence (old residence) and, within a period beginning 2 years before the date of such sale and ending 2 years after such sale, purchases a new principal residence (new residence), then the taxpayer recognizes gain realized on the sale only to the extent that the adjusted sale price[4] of the old residence exceeds the cost of purchasing the new residence.  Sec. 1034(a) and (b).  Thus, by applying all of the sale proceeds (net of selling costs) from the old residence towards the purchase of a new residence, a taxpayer defers recognition on all of the gain realized on the sale of the taxpayer's old residence.  Sec. 1.1034-1(a), Income Tax Regs.  If less than all of the sale proceeds are so applied, the taxpayer recognizes gain to the extent of the difference between the net proceeds and the cost of the new residence, limited, however, to the gain realized on the sale.  Id.  The provisions of section 1034 are mandatory.  Sec. 1.1034-1, Income Tax Regs.

In order to qualify for the rollover treatment provided for in section 1034, a taxpayer must purchase a new principal residence within the replacement period.  Whether a residence is

_____

[4]The adjusted sale price is the amount realized (selling price minus selling expenses) reduced by expenses of fixing up the residence preparatory to sale.  Sec. 1034(b).

used by a taxpayer as his principal residence depends on all the facts and circumstances of each case. Roth v. Commissioner, T.C. Memo. 1977-17; sec. 1.1034-1(c)(3)(i), Income Tax Regs. The taxpayer's cost of purchasing the new residence means the total of all amounts which are attributable to the acquisition, construction, reconstruction, and improvements constituting capital expenditures made during the replacement period. Shaw v. Commissioner, 69 T.C. 1034 (1978); sec. 1.1034-1(b)(7), (9), Income Tax Regs. Section 1.1034-1(c)(4)(i), Income Tax Regs., further provides:

> The taxpayer's cost of purchasing the new residence includes not only cash but also any indebtedness to which the property purchased is subject at the time of purchase whether or not assumed by the taxpayer (including purchase-money mortgages, etc.) and the face amount of any liabilities of the taxpayer which are part of the consideration for the purchase. Commissions and other purchasing expenses paid or incurred by the taxpayer on the purchase of the new residence are to be included in determining such cost.

The parties do not dispute the existence of the sale of petitioner husband's old residence, the date of the sale, the selling price, the gain realized on the sale, or the adjusted sale price of the old residence. The parties also agree that $229,472 was expended for construction and reconstruction on the King of Prussia residence, and that the King of Prussia property was subject to a $140,806 mortgage. The parties disagree, however, on the allocation of these amounts between petitioner husband and petitioner wife.

Respondent determined that petitioner husband's cost of purchasing his interest in the King of Prussia residence was $185,139, comprising one-half of the total amount expended for construction and reconstruction ($229,472) and one-half of the indebtedness ($140,806) that the King of Prussia property was subject to at the time of purchase. This determination would deny petitioners the nonrecognition treatment afforded by section 1034. Respondent's determination is presumed correct, and petitioners bear the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111 (1933).

Petitioner husband contends that he is entitled to receive credit for section 1034 purposes for all of the amounts expended for construction and reconstruction of the King of Prussia property and that he is entitled to include the entire outstanding balance of the mortgage in his cost of purchasing the King of Prussia property. Under his computation, petitioner husband now seeks to defer his gain realized on the sale of the Wyndmoor property in its entirety.

Maintaining continuity of title is a key to receiving nonrecognition treatment under section 1034. See Starker v. United States, 602 F.2d 1341, 1351 (9th Cir. 1979). The general rule requires that on the disposition of a taxpayer's old residence, the ownership of the new residence must be in that taxpayer's name in order to obtain nonrecognition of gain under section 1034. Marcello v. Commissioner, 380 F.2d 499, 502 (5th

Cir. 1967), affg. T.C. Memo. 1964-299 (gain recognized where title to new residence was placed in the name of the taxpayer's mother); Snowa v. Commissioner, T.C. Memo. 1995-336 (gain recognized where divorced taxpayer purchased new residence where title to new residence was jointly placed in the names of taxpayer and her new spouse and the taxpayer's cost of purchasing her interest in the new residence exceeded the adjusted sale price for her interest in old residence); May v. Commissioner, T.C. Memo. 1974-54 (gain recognized where title to new residence was placed in the name of the taxpayer's daughter). Generally, if there is a shift in title from the taxpayer to someone other than the taxpayer, then the nonrecognition provided for in section 1034 is denied. Marcello v. Commissioner, supra.

Accordingly, unintended recognition of gain may arise when a married taxpayer's contribution to the purchase price of a new residence is less than his or her share of the sale price received from the old residence, and title to the new residence is held in a different way than it was held in the old residence. Cf. Murphy v. Commissioner, 103 T.C. 111 (1994). Recognizing that difficulties may arise when married taxpayers buy and sell property, section 1034(g) provides a limited exception to the general ownership and purchase requirements as between spouses. Where both the old residence and the new residence are used by the taxpayer and the taxpayer's same spouse as their principal residence, they can file a special consent election under section

1034(g) to be treated as a single taxpayer for purposes of determining the old residence's adjusted sale price, the new residence's cost, the gain rolled over, and the new residence's basis. Sec. 1034(g); sec. 1.1034-1(f), Income Tax Regs. A section 1034(g) special election cannot be made in this case because both spouses did not reside in the husband's former residence.

In February 1989, petitioner wife transferred title in the King of Prussia property, which was owned solely by her, to herself and her husband, for consideration of $1. The deed that transferred ownership in the King of Prussia property did not specify whether the tenancy that was created was a joint tenancy or a tenancy by the entirety. Under Pennsylvania law, when married persons take title to a piece of property in the name of husband and wife, a presumption arises that such title vested in them by entirety, and because there is nothing in this record contradicting that presumption, we find that such conveyance created a tenancy by the entirety in the new residence. See Commissioner v. Estate of Bosch, 387 U.S. 456 (1967); In re Meyer's Estate (No. 1), 232 Pa. 89, 81 A. 145 (1911). The transfer of petitioner wife's interest in her residence to petitioner husband constituted a nontaxable gift under section 1041.[5] Pursuant to section 1041, the basis of the transferee

---

[5]SEC. 1041.  TRANSFERS OF PROPERTY BETWEEN SPOUSES OR
                                            (continued...)

spouse in the property shall be the adjusted basis of the transferor in the portion transferred.

Petitioner husband contends that because the King of Prussia property is held in a tenancy by the entirety, for purpose of section 1034, he is treated as an owner of the entire interest in the King of Prussia property. Accordingly, petitioner husband asserts that he is entitled to include all the amounts expended for construction and reconstruction of the King of Prussia property.

In Pennsylvania, a tenancy by the entirety is an estate per tout et non per my (by the whole and not by the half). Sterrett v. Sterrett, 401 Pa. 583, 585, 166 A.2d 1, 2 (1960). The distinctive characteristic of a tenancy by the entirety is that it is deemed to be owned by a single entity, the marital community. While a tenancy by the entirety resembles a common

---

[5](...continued)
                INCIDENT TO DIVORCE.

        (a) General Rule.--No gain or loss shall be
recognized on a transfer of property from an individual
to (or in trust for the benefit of)--
            (1) a spouse, or
            (2) a former spouse, but only if the transfer is
        incident to the divorce
        (b) Transfer Treated as Gift; Transferee Has
Transferor's Basis.--In the case of any transfer of
property described in subsection (a)--
            (1) for purposes of this subtitle, the
property shall be treated as acquired by
the transferee by gift, and
            (2) the basis of the transferee in the
property shall be the adjusted basis of
the transferor.

- 11 -

law joint tenancy in that each spouse owns the whole and, therefore, is entitled to enjoyment of the entirety and to survivorship rights, it differs in that neither person has an individual portion which can be alienated or separated, or which can be reached by the creditors of either spouse. See Meyer's Estate (No. 1), supra at 92, 81 A. at 146. Each spouse is seized of the whole of the property rather than any divisible part of the property.

Even though each spouse may have a right to possession of the entire property, the Supreme Court of Pennsylvania has held that this right cannot be exercised at the expense of the other spouse. Lindenfelser v. Lindenfelser, 396 Pa. 530, 153 A.2d 901 (1959). Each party to a tenancy by the entirety is entitled to equal use, enjoyment, and possession of the property so held, and, if necessary, this right may be enforced by injunctive order. Id. In Pennsylvania, one spouse may maintain an action in equity against the other to enforce his or her rights in a tenancy by the entirety, where one spouse wrongfully excludes the other from any form of possession. Mower v. Mower, 387 Pa. 325, 328, 80 A.2d 856, 858 (1957); Brobst v. Brobst, 384 Pa. 530, 532, 121 A.2d 178, 180 (1956). Consequently, we conclude that under Pennsylvania law the interest of petitioner wife in the King of Prussia property is equal to that of petitioner husband and cannot be ignored.

The mere fact that the King of Prussia property is held as tenants by the entirety does not determine the amount of the $229,472 in construction and reconstruction that is included in petitioner husband's cost of purchasing the King of Prussia property. For Federal tax law purposes, the phrase "taxpayer's cost of purchasing the new residence" includes contributions of both the taxpayer and the taxpayer's spouse to determine nonrecognition of gain under section 1034, if the taxpayer falls under the provisions of section 1034(g) and section 1.1034-1(f), Income Tax Regs. Petitioner husband fails to satisfy those provisions yet seeks their benefit.

Petitioners contend that the private agreement executed approximately 11 months after petitioner husband has sold the Wyndmoor property and 5 months after he had acquired a 50-percent ownership interest in the King of Prussia property allows him to include all of the reconstruction expenses in his cost of purchasing the King of Prussia property. Under the terms of this agreement petitioner husband was to use the proceeds from the sale of the Wyndmoor property to do major renovations on the King of Prussia property. This private agreement cannot rewrite history and fails to change the Federal tax consequences of transactions which took place months before it was executed. Nor does the agreement (or any other evidence of record) establish that petitioner husband in fact paid more than half the cost of the renovations.

Petitioner husband further relies upon Kellogg v. Commissioner, T.C. Memo. 1986-549, to support his argument that he is entitled to include the entire cost of reconstruction in his cost of purchasing the King of Prussia property. However, the facts in the Kellogg case are definitely distinguishable from the facts of this case. In Kellogg, the taxpayer sold his residence in 1979 and moved into his new wife's separate residence. Shortly thereafter, the wife quitclaimed her interest in the residence to the taxpayer and herself, as joint tenants with rights of survivorship. The wife made this transfer in consideration of improvements already paid for by the taxpayer, which were made before the house was jointly owned. The taxpayer's cost of the acquisition was held to include all of the reconstruction costs, in addition to one-half of the indebtedness to which the property was subject. In Kellogg, we did not address the issue of renovations and restorations made to jointly owned property.

In the instant case, the King of Prussia property was jointly owned when the improvements were made to the property. There is no evidence in the record that petitioner husband actually paid for more than half the cost of any of the capital improvements made to the new residence. All the renovation and restoration payments for the King of Prussia property were made from a joint checking account in the names of petitioners, or from a checking account in the name of petitioner wife.

Moreover, there is no evidence in the record that petitioner wife transferred her interest in her residence to herself and her husband in consideration of improvements to be made to the residence. Petitioners have failed to show that petitioner husband actually paid for more than half the improvements to the King of Prussia property, and it is stipulated that none was paid for from an account solely in the name of petitioner husband.

Petitioner husband contends that section 1034 does not require the proceeds from the old residence to be invested in the new residence. Petitioner husband contends that there is no provision in section 1034 or the regulations requiring that costs attributable to a new residence be split between husband and wife. However section 1034 requires that a taxpayer who wishes to defer recognition on all of the gain realized on the sale of an old residence must purchase a new residence for an amount greater than or equal to the adjusted sales price of the old residence. Petitioner husband has not proved that he provided more than half of the cash paid in the reconstruction of the King of Prussia property. Accordingly, respondent's determination on this point is sustained. As we have found that petitioner husband did not prove that he provided more than half of the amounts that were expended for construction and reconstruction for the King of Prussia property, we need not address

respondent's contention that section 1041 applies to this transaction.[6]

Petitioner husband relies on section 1.1034-1(c)(4), Income Tax Regs., for his assertion that he is entitled to include the entire outstanding mortgage balance on the new residence in the calculation of his acquisition cost. Section 1.1034-1(c)(4), Income Tax Regs., provides that the taxpayer's cost of purchasing the new residence includes not only cash but also any indebtedness to which the property purchased is subject at the time of purchase whether or not assumed by the taxpayer and the face amount of any liabilities of the taxpayer which are part of the consideration for the purchase. Petitioner husband maintains that he is entitled to include the entire outstanding mortgage on the property in his cost of purchasing the replacement residence despite the fact that he owns the King of Prussia property with his spouse. Petitioner husband entered into a private agreement in July of 1989 in which he agreed to assume one-half of the mortgage indebtedness of the King of Prussia property. This agreement states that the transfer of one-half of the property to petitioner husband was in exchange for his assumption of one-half of the mortgage indebtedness. We hold that petitioner husband's

---

[6]Respondent contends that when the provisions for deferral of recognition of gain on the sale of a residence under section 1034 overlap the provision of sec. 1041 for married spouses, the provisions of sec. 1041 apply (a matter on which we express no opinion).

cost of purchasing the King of Prussia property includes only one-half of the outstanding mortgage balance in addition to one-half the reconstruction costs. See, e.g., <u>Snowa v. Commissioner</u>, T.C. Memo. 1995-336; <u>Kellogg v. Commissioner</u>, <u>supra</u>.

For purposes of section 1034, petitioner husband's cost of purchasing the King of Prussia property is one-half of the amounts expended for reconstruction and renovation of this property, plus one-half of the outstanding mortgage balance. These amounts ($114,736 + $70,403) total $185,139. Accordingly, because the adjusted sale price of the old residence exceeds his purchase price in the new residence by more than the gain realized ($340,798 less $185,139 equals $155,659, which is more than $106,509), petitioners must recognize all of the gain realized on the sale of petitioner husband's old residence. Petitioners have conceded that the addition to tax under section 6653(a)(1) for negligence is applicable to any deficiency determined in this case.

Based on the foregoing,

<u>Decision will be entered for respondent</u>.