## Glazer *v.* Kurman, Appellant.

Argued January 10, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Frank Kingston Smith,* with him *Walter T. Darmopray* and *Hamilton, Smith & Darmopray,* for appellant.

*Paul A. Liebman,* with him *Newman & Master,* for appellee.

OPINION PER CURIAM, March 13, 1956:

The decree of the Court below is affirmed on excerpts from the Adjudication and Opinion of President Judge OLIVER of Court of Common Pleas No. 7, of Philadelphia County:

"This is a suit for partnership accounting brought by one partner upon dissolution of the partnership. The chancellor is concerned primarily with the years 1951 and 1952, since plaintiff assented to the correctness of the accounting made for the years 1948, 1949, 1950. For these three years there is still due plaintiff the sum of $775.05, which sum is reflected in the report made by independent auditors.

"Defendant kept the books of the company and he alone had the power to draw checks. He mingled partnership funds and personal funds in one bank account and, on this one account, drew checks to pay both partnership obligations and his own personal obligations. It requires no citation of authority to support the proposition that defendant's conduct amounted to a breach of the fiduciary duty which one partner owes to another. Because the tangled financial state of the partnership was brought about by defendant's wrongful conduct the chancellor should and will resolve all financial ambiguities against the defendant.

"However, plaintiff is not entitled to an accounting of rents received by defendant from the tenant who occupied a portion of the property owned by defendant, wherein the partnership business was conducted. This tenant occupied these premises prior to the formation of the partnership and plaintiff was aware of the tenant's existence at the time the partnership was formed. Plaintiff did not make a prompt demand for an ac-

counting of rentals received from this tenant. Instead, he manifested an acceptance of the situation and was satisfied to have defendant collect these rents personally.

"The parties agreed, at the suggestion of the court, to have independent auditors selected by them check the books of the partnership for the years 1951 and 1952. A firm of certified public accountants was selected by counsel for both parties to make this audit. This firm made a report of its audit to the chancellor. Defendant filed exceptions and, as a result of these exceptions, a second audit and report was ordered and made. The agreement between counsel to have independent auditors check the books of the partnership and make a report thereon was not in writing nor was it made in open court. However, it was made in the presence of the chancellor in his chambers in the course of a full discussion of the matters in controversy. Therefore, although the chancellor cannot simply file the auditors' report and dispense with a formal adjudication (cf. *Cohen v. Pucci,* 378 Pa. 571), the chancellor will in the main accept and be guided by the auditors' second report.

"On January 9, 1953 (after the dissolution of the partnership) defendant informed plaintiff that the rent defendant charged the partnership for the use of his building had been raised $50 per month, retroactive to January, 1950. He sought to justify this increase by the terms of the contract of partnership which provided that defendant could increase the rent in the event he made new building improvements. Defendant maintained that he had personally paid for improvements made in 1949, and that he therefore was entitled to the rent increase. However, the facts do not confirm defendant's contention. The work on the building was done by employees of the firm during normal

working hours. Defendant admitted this but claimed that he paid the employees from personal funds. However, defendant drew funds from the mixed (business and personal) bank account to pay the firm employees for this work and he failed to show that the money so used was his. The burden of proving that he used his own personal funds was on defendant and he failed to meet that burden. Therefore, we find no basis for allowing defendant to absorb partnership profits by charging this $1,800 in retroactive rent.

"This retroactive rent charge, which defendant sought to impose on the partnership, was simply a 'book transaction.' No money actually changed hands. The auditors therefore disregarded this charge entirely and their report need not be changed as to this item.

"The auditors' report for the years 1951 and 1952 shows that, in addition to $75 per week withdrawn by each partner, defendant withdrew $11,358.31, whereas plaintiff withdrew only $1,483.27. This report further shows that there is still due plaintiff the sum of $5,510.39, as of the date of dissolution of the partnership, December 31, 1952.

"Upon formation of the partnership plaintiff paid to defendant $2,000 which, in the language of the contract (see discussion in the next paragraph of this opinion), was to 'make his (plaintiff's) contribution equal, as agreed, to Michael Kurman's share . . . .' The terms of the contract clearly provided that plaintiff's $2,000 was to be a contribution to the firm. It was not a payment to defendant personally. However, defendant wrongfully converted this money to his own use. A study of the exhibits reveals that Kurman had an account in the Wyoming Bank and Trust Company from November, 1947 to March, 1949. This account was in Kurman's name and it was into this account that he deposited $1,000 on March 11, 1948 (one week

after he received a check in that amount from Glazer). There was no proof advanced by Kurman that this account was a business account nor was there any showing that this $1,000, or any part of it, was used for business purposes. Kurman failed also to account for the other $1,000 he received from Glazer. Therefore, on dissolution of the partnership, Glazer was entitled to receive his one-half share of this $2,000, since it should have been, but was not, included as a firm asset. The fact that Glazer paid the money to Kurman personally has no significance since Kurman kept the books and controlled the firm's money completely.

"The written contract is clear and unambiguous and it was not only the best but the only evidence of the agreement between the parties, as defendant did not allege fraud, accident or mistake. All preliminary conversations and negotiations by the parties were merged into and superseded by this written contract. Parol evidence as to any prior or contemporaneous oral agreement between the parties was properly excluded by the chancellor. *Gianni v. Russell,* 281 Pa. 320. Furthermore, it must be remembered that this agreement was prepared by defendant's accountant at defendant's request.

"The auditors knew nothing about this $2,000 and it was not reflected in their report. $1,000 must therefore be added to the sum of $5,510.39 found by the auditors to be due plaintiff, making the total sum of $6,510.39 due and payable by defendant to plaintiff, with interest thereon from December 31, 1952, the date of dissolution of the partnership.

"In 1952 the partnership purchased a 1951 Buick automobile for $1,000. This car has not been sold. It remains in defendant's possession. The auditors in making their report, did not include this automobile as an asset of the business because there were no book

288

entries pertaining to this transaction. If the parties cannot amicably agree to a disposition of the automobile the chancellor will direct that it be sold at public sale and the proceeds distributed equally, after deduction of costs and commissions."