Watkins *v.* Watkins, Appellant.

Argued April 28, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Martin G. Stein,* with him *William S. Stein,* for appellant.

*A. Leon Higginbotham, Jr.,* with him *Doris M. Harris, Hardy Williams,* and *Norris, Schmidt, Green, Harris & Higginbotham,* for appellee.

OPINION PER CURIAM, May 26, 1958:

The decree of the court below is affirmed on the following opinion of Judge LEVINTHAL as chancellor, which was adopted by the court en banc:

"Plaintiff's bill in equity alleges her ownership, separately or as a tenant by the entireties, of certain personal property. She asks relief from her husband's alleged interference with her property interests.

"(a) The first group of properties consists of four savings accounts in the joint names of the parties. Plaintiff contends that the parties hold these accounts by the entireties and because defendant withdrew funds for his separate use, she is entitled to a partition of the accounts. *Berhalter v. Berhalter,* 315 Pa. 225 (1934). Therefore, she claims one-half of the highest total balance and interest thereon from the date of trial.

"We find that all four accounts are owned by the entireties. There is no question as to three of them. Their signature cards, which indicate present joint ownership and a right of survival, establish plaintiff's claim prima facie. *Fell's Estate,* 369 Pa. 597 (1952). We do not believe defendant's evidence to the contrary. However, the card for the Pennsylvania Company account merely indicates that both parties have a right to draw on the account. Since the card does not indicate who owns the fund, it is insufficient evidence of plaintiff's ownership. *Flanagan v. Nash,* 185 Pa. 41 (1898). However, we think that defendant's answer concedes that this account is owned by the entireties. It admits the amended complaint's allegation that this is a 'joint account'. While this phrase is ambiguous, defendant's brief indicates that he understands this to be an admission of plaintiff's joint *ownership* of the account.

"Plaintiff is entitled to the relief which she demands, under the authority of the *Berhalter* case. Her right is clear with respect to two accounts. Funds withdrawn from the Western Savings Fund account were deposited in the name of defendant subject to a

tentative trust for one of the children. We need not consider whether an irrevocable gift to this child would have been a proper use of entireties funds. Because the trust is tentative, the entire fund can be withdrawn by defendant for his sole use. Coming next to the Pennsylvania Company account, defendant admits that he was about to close it when the preliminary injunction issued. We do not believe that he planned to deposit this fund in an entireties account in another bank. Moreover, defendant's secrecy and general course of conduct also suggest that he intended to divert the money to his own use.

"There is no question that defendant withdrew a total of $5000 from the Broad Street Trust account. However, there was no testimony indicating the manner in which the money was spent. Furthermore, part of this amount was withdrawn after the parties had agreed that defendant could use these funds in his business, pending the outcome of this suit. Therefore, a finding that defendant used this money improperly would be based merely on conjecture. It also is unquestioned that no money has been withdrawn from the Philadelphia Savings Fund account. Consequently, a division of the two accounts cannot be ordered if the *Berhalter* case requires an improper withdrawal from each account partitioned. Plaintiff contends that it does not.

"We agree with plaintiff's position. It is true that the *Berhalter* case allows a termination of the joint tenancy where one spouse has misappropriated a particular entireties fund. However, this does not indicate that only the account from which the funds were diverted can be partitioned. The Supreme Court does not limit a spouse's relief to a division of the money actually taken; its opinion clearly indicates that the balance remaining in the fund also may be partitioned.

'When the wife in her own behalf and for her own use withdrew *part of the fund* from the bank, this action was tantamount to an offer to her husband to destroy the *estate* by the entirety.' 315 Pa. at pp. 228-229 (emphasis supplied). Therefore, the *Berhalter* rule is not merely designed to afford the injured spouse a recovery of money actually taken. Implicit in the opinion is the conviction that the injured party should not be subjected to the risk of future misappropriations by a spouse who has disregarded the tenancy's fundamental obligation. 'Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto. . . . When the wife attempted to withdraw more than one-half of this fund, *or any of it,* from the bank and use it for her individual purposes, she violated the terms of the entirety agreement.' (emphasis supplied) at page 228. Here, defendant's course of conduct indicates a disregard of the obligations of the tenancy by which all four accounts are held. Therefore, it would be inconsistent with the policy of the *Berhalter* case to require plaintiff to wait until funds also are diverted from the two hitherto unwithdrawn accounts before suing to protect her interest in them. Accordingly, plaintiff is entitled to one-half of the highest balance of all but the Broad Street Trust account, with interest at the legal rate from the date of trial. She also is entitled to one-half of the Broad Street Trust account's balance on the date of trial, also with interest.

"(b) Six savings accounts in the name of defendant, subject to tentative trusts for various children, also are involved in this suit. We do not accept plain-

tiff's testimony that these funds were opened with plaintiff's money, and with the understanding that they should be entireties accounts. Accordingly, she is entitled to no relief with respect to them.

"(c) Defendant admits that he purchased fifty shares of Delaware Fund stock in plaintiff's name. Since a gift is presumed, the burden was on him to prove unequivocally the existence of a resulting trust. *Gassner v. Gassner*, 280 Pa. 313 (1924); 4 Scott, Trusts, 3030, 3011 (2d ed. 1956). Defendant's testimony did not carry this burden. The fact that he retained possession of the certificates is not inconsistent with the presumption of plaintiff's beneficial interest. Nor was defendant's interest established by proof that he had received and cashed most of the dividends earned by these shares. His reason for doing so was a desire to 'get back' part of the original purchase price. This resolve, however, sheds no light on defendant's state of mind at the time of the purchase. We therefore find plaintiff to be the absolute owner of these shares, and also entitled to a return of the dividends converted by defendant.

"(d) It is admitted that defendant holds Federal government bonds totalling $150 in the name of plaintiff; defendant also admits that bonds totalling $225 are registered in their joint names. Defendant introduced no evidence to rebut the presumption of a gift to the plaintiff and the entireties, respectively. We therefore find plaintiff to be the absolute owner of the first set of bonds, and, with defendant, a joint owner of the second group.

"The testimony also indicated that defendant may have created express trusts of other bonds for the benefit of the children. However, we do not decide this question. The children are not parties to this action; nor does plaintiff sue on their behalf."

Decree affirmed at the appellant's costs.