Nancy L. FAZEKAS, Appellee,

v.

George A. FAZEKAS, Estate of George A. Fazekas, Appellant.

Superior Court of Pennsylvania.

Submitted July 12, 1999.

Filed Sept. 3, 1999.

John O. Dodick, Erie, for George A. Fazekas.

Mary Jane Jacques, Natrona Heights, for Nancy L. Fazekas.

Frank A. Wolfe, Ford City, for Estate of George A. Fazekas.

Before JOYCE, STEVENS and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellant, the mother of George Fazekas and the executrix of his estate, appeals from the November 17, 1998 Order granting appellee Nancy Fazekas' petition to dismiss a divorce action and directing the prothonotary of Armstrong County to pay over certain escrow funds to Mrs. Fazekas.

¶ 2 George Fazekas (hereinafter "husband") and Nancy Fazekas (hereinafter "wife") were married in 1970 and separated in 1986. On July 15, 1986, wife filed for divorce and, thereafter, a dispute arose over the proceeds of a bar husband and wife sold to a third party, Thomas Mangol, in 1981. As a result of the dispute, $10,000 was placed in escrow with the prothonotary of Armstrong County. The escrow amount, which was held by husband and wife in the entireties, represents mortgage payments made by Mangol. Wife acknowledges she also may have received additional payments from Mangol that were not part of the escrow funds. Husband died on September 22, 1996, while still married to wife. Thereafter, wife filed a motion to dismiss the divorce action. Because the escrow funds were held by the entireties with husband, wife also sought a court Order directing the prothonotary to pay the funds to her.[1] Appellant opposed such an Order on the basis that wife's receipt of mortgage payments that were not included in the escrow funds, to the exclusion of husband, operated to sever the entireties estate and converted the escrow funds into joint property. As a result, appellant argued one-half of the escrow funds should be distributed to husband's estate. By Order dated November 17, 1998, the court dismissed the pending divorce action and directed payment of the escrow funds to wife. This appeal followed.

---

1. A tenancy by the entireties includes the right of survivorship; upon the death of one spouse the survivor becomes the sole owner of the entireties property. *In re Holmes Estate,* 414 Pa. 403, 200 A.2d 745 (1964).

¶ 3 Appellant argues, as she had below, that wife's receipt of mortgage funds to the exclusion of husband operated to sever the entireties estate and convert it into an estate of joint ownership whereby husband and wife were each entitled to one-half of the escrow amount. As a result, appellant argues the trial court erred in awarding the entire amount to wife as a tenant by the entireties. We disagree.

¶ 4 Our analysis begins with well-established legal principles. A tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife, with its essential characteristic being that "each spouse is seised per tout et non per my, i.e. of the whole or the entirety and not of a share, moiety or divisible part." *In re Gallagher's Estate*, 352 Pa. 476, 43 A.2d 132, 133 (1945) (citations omitted). When one spouse dies, the surviving spouse takes no new estate; rather, the only change is in the properties of the legal entity holding the estate. *Beihl v. Martin*, 236 Pa. 519, 84 A. 953 (1912). For the duration of the entireties estate, either spouse has the presumptive power to act for both, so long as both spouses share the proceeds, *Gallagher, supra*, and neither spouse may appropriate property for his or her own use, to the exclusion of the other spouse, without the consent of the other spouse, *Shapiro v. Shapiro*, 424 Pa. 120, 224 A.2d 164 (1966).

¶ 5 With specific reference to this case, it is well-established that severance of an entireties estate "may be achieved only through divorce, a joint conveyance or mutual agreement, either express or implied; a tenancy by the entireties cannot be severed or conveyed away by the independent action of one spouse." *Estate of Maljovec*, 412 Pa.Super. 80, 602 A.2d 1317, 1320 (1991). In the 1934 case of *Berhalter v. Berhalter*, 315 Pa. 225, 173 A. 172 (1934), our Supreme Court considered the type of implied mutual agreement necessary to sever an entireties estate. In that case, an estranged wife withdrew $6,000 from an entireties bank account and deposited it in a different bank under her own name. Husband petitioned the court for a division of the funds.

¶ 6 On appeal, the Supreme Court began by recognizing that, under existing law, the rule against unilateral severance would result in a hardship to husband, since wife's withdrawal could not work a severance and therefore husband was not entitled to a division of the funds. To avoid this result, the Supreme Court fashioned a novel solution. Finding an implied mutual agreement, the Court determined that wife's diversion of funds to her own use "was tantamount to an offer to her husband to destroy the estate by entirety," 173 A. at 173, and husband's petition for a division of the funds "constituted an acquiescence in [wife's] offer or election to divide the funds." *Id.* By construing wife's unilateral action as an implied offer and husband's petition as an implied acceptance, the Supreme Court protected husband's interest in the funds without altering the unity inherent to a tenancy by the entireties. *See Maljovec*, 602 A.2d at 1320 ("[B]y framing the wife's usurpation of the funds in terms of an implied offer and the husband's petition for division of the funds in terms of an implied acceptance, the supreme court [in *Berhalter*] protected the husband's interest during coverture without impairing the unities underlying tenancies by the entireties.").

¶ 7 The Supreme Court extended the rationale of *Berhalter* to a dispute over savings bonds in *Stemniski v. Stemniski*, 403 Pa. 38, 169 A.2d 51 (1961). In that case, the husband redeemed bonds held by the entireties and deposited the proceeds in an account held in his name only. Wife petitioned for an accounting and reimbursement of one-half of the amount of the bonds. The trial court granted relief and the Supreme Court affirmed, holding as follows:

A violation of the rules by one spouse's appropriating the property to

his own use works a revocation of the estate by the fiction of appropriation's being an offer of an agreement to destroy the estate and an acceptance of that offer when the other spouse starts suit; the property is then fit for accounting and division.

169 A.2d at 53 (citations omitted). As *Berhalter* and *Stemniski* indicate, two elements must be present in order for a court to find that an implied mutual agreement has severed a tenancy by the entireties. First, a misappropriation by one spouse must occur (the offer); second, the other spouse must file suit for an accounting, division or other appropriate relief (the acceptance). *See also Clingerman v. Sadowski*, 513 Pa. 179, 519 A.2d 378, 383 (1986) ("It is a two-part test of an offer, consisting of a misappropriation, and an acceptance, consisting of the filing of an action to partition [or other remedy].").

 ¶ 8 Applying this standard to the instant facts, we reiterate wife's concession that she may have received mortgage funds from Mangol and that those funds were retained to the exclusion of husband. *See* N.T., 8/26/98, at 17–18. Under *Berhalter*, this receipt of funds may well have been an implied offer by wife to destroy the tenancy by the entireties. There is no evidence, however, and appellant does not contend otherwise, that husband ever filed an action seeking any type of relief at any time prior to his death in 1996. As a result, husband took no action that would constitute an acceptance of wife's offer to destroy the entireties estate, despite the fact that he lived for approximately four to five years after wife made her implied offer by receiving mortgage funds from Mangol.[2]

¶ 9 Apparently recognizing that half of the two-part *Berhalter* test for severance has not been met, appellant argues that "the time has come to allow the estate of a spouse who has been harmed by misappropriation of marital funds to bring an action for a severance of the entireties' property to prevent injustice on the part of the surviving wrongdoer." (Appellant's Brief at 15.) In making this argument, appellant is apparently urging us to abandon the acceptance requirement of *Berhalter* and to permit severance where only an offer is made by one spouse. If we were to endorse this argument, we would necessarily destroy the time-honored principle that a tenancy by the entireties may not be altered by the unilateral action of one spouse. *Maljovec, supra.* It was precisely this principle that the Supreme Court upheld when it fashioned the novel holding of *Berhalter*. As noted, by requiring the joint action necessary for both offer and acceptance, the holding struck a balance between protection of the wronged spouse's interest in the diverted funds and maintenance of the unity underlying a tenancy by the entireties. We decline appellant's invitation to disturb that balance.

¶ 10 Finally, we note that application of the *Berhalter* standard is not altered by the fact that husband is now deceased. As the Supreme Court has noted in a similar case, "The essential issue in the case sub judice is the status of the entireties estate at the time of [the spouse's] death." *Clingerman*, 519 A.2d at 381; *see also In re Estate of Livingston*, 531 Pa. 308, 612 A.2d 976 (1992) (holding that where no action is commenced against the wrongdoing spouse prior to death, the surviving spouse is entitled to all funds held by the entireties). Here, at the time of husband's death, the tenancy by the entireties had not been severed. As a result, wife was entitled to all funds held in escrow by the prothonotary of Armstrong County. We therefore affirm the November 17, 1998 Order of the trial court.

¶ 11 Order affirmed.

---

2. Wife testified that, although she could not recall with precision, she may have received the mortgage funds in 1991 or 1992 (N.T., 8/26/98, at 18).