### In re ESTATE OF Michael A. CAMBEST, Deceased.

### Appeal of Dolores Khalouf, Executrix of the Estate of Mary Jane Cambest, Deceased, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 17, 1999.
Filed July 3, 2000.

Jon Pushinsky, Pittsburgh, for appellant.

Chris Farrell, Pittsburgh, for appellee.

Before FORD ELLIOTT, LALLY–GREEN and TAMILIA, JJ.

FORD ELLIOTT, J.:

¶ 1 The Orphans court *en banc* dismissed appellant Dolores Khalouf's (Khalouf's) exceptions to an order requiring her to surrender over $400,000 in assets she withdrew from joint accounts held by Mary Jane Cambest (Wife) and Michael A. Cambest (Husband). We affirm, but for reasons different from those articulated by the Orphans Court. An edited version of the Orphans court's findings of fact, which are the stipulations of fact submitted by the parties, follows:

## FINDINGS OF FACT

1.  Mary Jane Cambest died on November 1, 1995, at the age of 51, survived by her husband, Dr. Michael A. Cambest, Jr., her sister, Dolores C. Khalouf, and her brother, William Cherry.

2.  Dr. Michael A. Cambest, Jr. died on December 8, 1995, at the age of 83, survived by his adult children, Lynn M. Cambest and Michele Cambest Landro. These two children were born to Dr. Cambest from a prior marriage.

3.  Dr. Michael A. Cambest, Jr. [a]nd Mary Jane Cambest were married on July 23, 1991. Prior to their marriage, Mary Jane Cambest worked as a nurse for Dr. Cambest, and they had resided together for at least ten (10) years.

4.  At the time of their marriage, Dr. Michael A. Cambest, Jr. [w]as 78 years of age, and Mary Jane Cambest was 46 years of age.

5. The following documents were executed by Dr. Cambest and Mary Jane Cambest as hereinafter shown:

Last Will and Testament of Mary Jane Cambest, dated October 28, 1995.

Power of Attorney of Mary Jane Cambest appointing Dolores C. Khalouf as her attorney-in-fact, dated April 6, 1995.

Last Will and Testament of Michael A. Cambest, Jr. dated September 17, 1993.

Power of Attorney of Michael A. Cambest, Jr., appointing Mary Jane Cambest as attorney-in-fact, dated September 17, 1993.

Power of Attorney of Michael A. Cambest, Jr., appointing Mary Jane Cambest as attorney-in-fact, dated January 21, 1993.

All of the foregoing documents were executed with the requisite mental capacity, are legally enforceable, and were not the result of fraud or undue influence.

6. On October 27, 1995, Jay L. Fingeret, Esquire, met with Mary Jane Cambest, at her request, to discuss her estate plan in connection with the preparation of a new Will. On October 28, 1995, Mary Jane Cambest executed her Last Will and Testament which was prepared by Attorney Fingeret in accordance with their discussions.

7. Attorney Fingeret advised Mary Jane Cambest that funds held in joint names between her and Dr. Cambest would not pass under her Will in the event she predeceased Dr. Cambest.... Mary Jane Cambest directed that the funds which were held in joint accounts, titled in the names of Michael A. Cambest, M.D. or Mary Jane Cambest, be transferred into an account in her name alone.

8. On October 28, 1995, Mary Jane Cambest, who was physically incapacitated at the time, directed her sister, Dolores C. Khalouf, and Attorney Fingeret to proceed to PNC Bank and Dollar Bank, where the joint accounts were located, and to transfer the funds from those joint accounts into accounts bearing only her name.

9. On October 28, 1995, Dolores C. Khalouf, accompanied by Jay L. Fingeret, Esquire, proceeded to PNC Bank and Dollar Bank to effectuate the transfers (which are described in detail hereafter) in accordance with Mary Jane Cambest's instructions. They returned to PNC Bank and Dollar Bank on October 30, 1995, to complete the transfers.

10. Upon arrival at PNC Bank and Dollar Bank, Attorney Fingeret explained the circumstances and purpose of the transfers. PNC Bank required a copy of Mary Jane Cambest's April 6, 1995 Power of Attorney, and Dollar Bank required a certified copy of said Power of Attorney.

11. The Power of Attorney of Michael A. Cambest appointing Mary Jane Cambest as his attorney-in-fact, dated September 17, 1993 was not shown to or given to PNC Bank or Dollar Bank when the transfers were made by Dolores C. Khalouf. Neither PNC Bank nor Dollar Bank requested or required a copy of Michael A. Cambest's September 17, 1993 Power of Attorney.

12. On October 30, 1995, pursuant to Dollar Bank's requirements, Attorney Fingeret recorded a copy of the Power of Attorney of Mary Jane Cambest, dated April 6, 1995, in the Register of Wills Office of Allegheny County, Pennsylvania, and delivered a certified copy of the Power of Attorney to Dollar Bank. Attorney Fingeret did not record a copy of the Power of Attorney of Michael A. Cambest, dated September 17, 1993.

13. At the time of the subject transfers from the PNC Bank and Dollar Bank accounts, ..., Dr. Michael A. Cambest

lacked the requisite mental capacity to make a valid disposition of his property.

Trial court opinion,[1] 6/17/98 at 1–3.

¶ 2 The parties also stipulated, and the chancellor found, that shortly after the parties were married, Husband added Wife's name to three bank accounts previously titled in his name only. Two of the accounts were with PNC Bank. Husband opened the first jointly held PNC account with a transfer of $152,016.77. On October 30, 1995, Khalouf withdrew $169,810.72 from that account, to which Wife had made no deposits. On the same day Khalouf withdrew $86,603.38 from the other PNC account, from which there had been numerous withdrawals and to which there had been numerous deposits since Husband added Wife to the account, when the balance was $5,936.76. Khalouf used $80,000 to purchase a certificate of deposit in Wife's name and used the remaining amount to open a checking account in Wife's name. Also on October 30, 1995, Khalouf withdrew $155,466.75 from the remaining account, with Dollar Bank. When Husband added Wife to this account, it had a balance of $224,019.29. Neither Husband nor Wife made contributions to this account although other withdrawals were made prior to Khalouf's withdrawal. (*Id.* at 4–11.)

¶ 3 After a hearing at which the chancellor, the Honorable Nathan Schwartz, heard argument based on the stipulated facts, the court reached the following conclusions of law:

## CONCLUSIONS OF LAW

1. The actions of Dolores C. Khalouf, as directed by Mary Jane Cambest, in removing Decedent's name from the jointly held assets were directly contrary to the known and probable intent of Decedent with respect to the disposition of his estate. 20 Pa.C.S.A. § 5603[a](4).[2]

2. Decedent, as sole contributor of the three joint accounts, was the sole owner of the account[s] during his lifetime. 20 Pa.C.S.A. § 6303(a).

3. The Estate of Mary Jane Cambest has failed to produce clear and convincing evidence to rebut the statutory presumption set forth in Conclusion # 2, *supra*.

For the forgoing reasons, an order will be entered directing the return of the proceeds of the joint accounts to the Executor of the Estate of Michael A. Cambest, Deceased.

*Id.* at 11–12. Khalouf then filed exceptions, which were argued before an *en banc* panel of the Orphans court and dismissed, with one judge dissenting. This timely appeal followed. On appeal, Khalouf raises one issue:

Where the unequivocal language of a power of attorney authorized the attorney-in-fact to transfer property which she held jointly with her principal into her name alone, did the lower court err as a matter of law in disregarding that language and voiding the transfer solely on the basis of the court's determination that the transfer was contrary to the principal's testamentary intent as evidenced by his last will and testament?

Appellant's brief at 4.

¶ 4 Our standard of review in addressing an appeal from a decree in

---

1. There are two trial court opinions, one filed June 17, 1998 containing the chancellor's findings of fact and conclusions of law, to which Khalouf filed exceptions, and a Rule 1925(a) opinion, filed April 27, 1999 in response to Khalouf's appeal. We will use the dates to indicate to which we are referring.

2. At the time Husband executed his power of attorney, this section provided that "An attorney-in-fact and the donee of a gift shall be responsible as equity and justice may require to the extent that a gift made by the attorney-in-fact is inconsistent with ... the known or probable intent of the principal with respect to disposition of his estate." 20 Pa.C.S.A. § 5603(a)(4)(repealed). Similar language is now found at 20 Pa.C.S.A. § 5601.2(e).1999, Oct. 12, P.L. 422, No. 39, § 9, effective in 60 days.

equity is well established. We are bound by the chancellor's findings of fact " 'unless there has been an abuse of discretion, a capricious disregard of evidence, [or] a lack of evidentiary support on the record....' " *Horner v. Horner*, 719 A.2d 1101, 1103 (Pa.Super.1998), quoting *Pennsylvania Power & Light Company v. Maritime Management, Inc.*, 693 A.2d 592, 593 (Pa.Super.1997), *appeal denied*, 550 Pa. 708, 705 A.2d 1310 (1997). Our review is therefore " 'limited to a determination of whether there was an error of law and whether the chancellor's factual findings are supported by sufficient evidence.' " *In Re Estate of Petro*, 694 A.2d 627, 632 (Pa.Super.1997), *appeal denied sub nom. Estate of Petro v. Cuniak*, 550 Pa. 719, 706 A.2d 1213 (1997), quoting *Hera v. McCormick*, 425 Pa.Super. 432, 625 A.2d 682, 685 (1993).

■ ¶ 5 Furthermore, we are not bound by the chancellor's conclusions of law; rather, where the rules of law on which the chancellor relied are " 'palpably wrong or clearly inapplicable,' we will reverse the chancellor's decree." *Horner*, 719 A.2d at 1103, citing *DeMarchis v. D'Amico*, 432 Pa.Super. 152, 637 A.2d 1029, 1033 (1994), and quoting *Snyder Brothers, Inc. v. Peoples Natural Gas Company*, 450 Pa.Super. 371, 676 A.2d 1226, 1229 (1996), *appeal denied sub nom. Snyder Brothers, Inc. v. Yohe*, 546 Pa. 683, 686 A.2d 1312 (1996).

¶ 6 Khalouf challenges only the chancellor's first conclusion of law, determining that Wife, through Khalouf, acted directly contrary to the known and probable intent of Husband with respect to the disposition of his estate when Khalouf transferred the assets in the joint accounts to accounts in Wife's name only. The chancellor relied upon Husband's will, executed September 17, 1993, leaving all of his property to Wife but providing that in the event Wife did not survive him, all of his property was to pass to his two adult children. (Trial court opinion, 4/27/99 at 102, R.R. at 12b–13b.) The chancellor also relied upon § 5603(a)(4), noted *supra*.

¶ 7 In support of her claim that withdrawal of the bank account funds did not violate Husband's intent with regard to disposition of his estate, Khalouf relies on Husband's broad power of attorney, which provides in pertinent part:

### POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS,** that I, MICHAEL A. CAMBEST, JR., of the County of Allegheny and Commonwealth of Pennsylvania, have constituted, made and appointed, and by these presents do constitute, make and appoint MARY JANE CAMBEST, my wife, my true and lawful attorney:

. . . .

2. To deposit any monies which may come into her hands as such attorney with any bank or banker, either in my name or her name, and any of such money or any other money to which I am entitled which now is or shall be so deposited to withdraw as she shall think fit; to sign mutual savings bank and federal savings and loan association withdrawal orders; to sign and endorse checks payable; otherwise deal with any bills of exchange, checks, promissory notes or other commercial or mercantile instruments; to borrow any sums of money on such terms and with such security as she may think fit and for that purpose to execute all notes or other instruments which may be necessary or proper; and to have access to any and all safe deposit boxes registered in my name.

. . . .

12. In addition to the powers and discretion herein specially given and conferred upon him and notwithstanding any usage or custom to the contrary, to have the full powers, right and authority to do, perform and to cause to be done and per-

form all such acts, deeds, matters and things in connection with my property and estate as she in her sole discretion, shall deem reasonable, necessary and proper, as fully, effectually and absolutely as if he were the absolute owner and possessor thereof.

R.R. at 39b–41b. According to Khalouf, Wife acted pursuant to this broad power of attorney when she directed Khalouf to withdraw the assets from the joint accounts and open accounts in her name only. (Khalouf's brief at 15.) Thus, according to Khalouf, "[T]he central issue relevant to the resolution of this appeal is whether [Husband] intended, at the time he granted [Wife] the broad durable Power of Attorney on September 17, 1993, to empower her to transfer joint account funds into her own name." (*Id.*)

¶ 8 We agree with Khalouf that Husband's ***testamentary*** intent is .only some evidence of his intent with regard to disposition of his estate, because the transfer of assets occurred during Husband's lifetime. We also agree that the power of attorney is relevant to determining Husband's intent with regard to disposition of his estate during his lifetime. We disagree, however, with Khalouf's statement of the central issue in this appeal. Instead, we find the central issue to be whether Khalouf acted pursuant to the authority to act on Husband's behalf granted to Wife in Husband's power of attorney. We recognize that at first reading, the analysis that follows may seem tortured and academic. We find the seemingly convoluted analysis essential, however, because the gravamen of this appeal goes to the very essence and purpose of the grant of a power of attorney.

¶ 9 The law governing powers of attorney is codified as the Powers of Attorney Act at 20 Pa.C.S.A. §§ 5601–5611.[3] Khalouf cites a long line of cases interpreting the act to authorize an attorney–in–fact to perform the specific acts delineated in § 5602(a) even though the power of attorney contains only broad, general language. *See Estate of Reifsneider*, 531 Pa. 19, 610 A.2d 958 (1992); *Brenner v. Manmiller*, 531 Pa. 209, 611 A.2d 1199 (1992) (*per curiam*) (reversing this court based on *Reifsneider, supra*); and *Taylor v. Vernon*, 438 Pa.Super. 479, 652 A.2d 912 (1995).[4]

¶ 10 In this case, Husband's power of attorney granted to Wife "as such attorney" virtually unfettered power to dispose of Husband's estate in any manner and for any purpose she saw fit, including the power to withdraw money from bank accounts as she saw fit and to deposit money in accounts in her name only. *See In Re Estate of Augustine*, 695 A.2d 836, 838 (Pa.Super.1997) (regardless of the self-dealing nature of attorney-in-fact's gift to

---

**3.** At the time Husband executed his power of attorney in September 1993, the Powers of Attorney Act, as amended through December 16, 1992, included only sections 5601 through 5608; thus only those sections, as they existed in 1992, apply to this case. 1992, Dec. 16, P.L. 1163, No. 152. *See Estate of Reifsneider*, 531 Pa. 19, 610 A.2d 958 (1992), for a history of the law of powers of attorney through adoption of language from the Uniform Power of Attorney Act in 1982. The Act was subsequently amended in 1994 and, extensively, in 1999.

**4.** Recent amendments to the Powers of Attorney Act include the addition of § 5601.2, Special rules for gifts. Subsection c of that section, entitled "Unlimited Gifts," provides that "A principal may authorize an agent to make

any other gift [not a limited gift] only by specifically providing for and defining the agent's authority in the power of attorney." Title 20 § 5601.2(c), 1999, Oct. 12, P.L. 422, No. 39, § 9, effective in 60 days. Subsections 5601.2(a), (b), and (c) apply to powers of attorney executed 60 days after enactment. Thus, *Reifsneider* and its progeny control this case. *See Commonwealth v. Shaffer*, 557 Pa. 453, 457–461, 734 A.2d 840, 843–844 (1999) (judicial construction of a statute becomes part of the legislation from the time of its enactment unless the legislature clearly indicates that its amendment of a statute is to be applied retroactively; the legislature cannot, by act of assembly, overrule a judicial decision or create retroactive authority by passing "clarifying" legislation (citations omitted)).

herself, the trial court erred as a matter of law when it concluded that the attorney-in-fact could not transfer land to herself in her capacity as power of attorney). Nevertheless, we agree with Husband that Khalouf did not withdraw the assets in the bank accounts pursuant to Husband's power of attorney.[5] *See id.* (even where broad power of attorney grants to attorney-in-fact the authority to gift real property to herself pursuant to *Reifsneider*, the gift must fail in the absence of evidence that the donee executed the deed as attorney-in-fact for donor).

¶ 11 According to the Act as it existed in 1993, Husband's power of attorney could have authorized Wife to delegate to a third party the power to engage in banking transactions on behalf of Husband or to appoint a third party as Wife's successor attorney-in-fact. 20 Pa.C.S.A. § 5602(b) (amended). In actuality, Husband's power of attorney seems to have granted to Wife such authority. (R.R. at 40b, ¶ 11 ("giving to [Wife] the power to make and substitute under [her] attorney or attorneys for all the purposes herein described. . . .")) We will therefore assume, without deciding, that Wife had authority to engage a substitute attorney to act on Husband's behalf with regard to the funds in the jointly held accounts.

■ ¶ 12 Even so, however, we find nothing in *Wife's* power of attorney empowering Khalouf to act on *Husband's* behalf, with regard to the jointly held accounts or anything else. "It has been a fundamental principle that powers of attorney are strictly construed and the grant of special powers is not to be enlarged unless

this is clearly intended." *Reifsneider, supra* at , 610 A.2d at 960. Wife's power of attorney provides in relevant part:

> I . . . do hereby nominate, constitute and appoint my sister . . . my true and lawful attorney-in-fact, for me and in my name, place and stead, to conduct all of my business and affairs including, but not limited to, the following acts:
>
> . . . .
>
> 14. To engage in banking and financial transactions.
>
> . . . .
>
> I further give and grant unto my said attorney-in-fact full power and authority to do and perform every act necessary and proper to be done in the exercise of any of the foregoing powers as fully as I might or could do if personally present. . . .

R.R. at 74b–76b. Thus, while Wife's power of attorney authorized Khalouf to engage in banking and financial transactions for Wife and in her name, place, and stead, it did not empower Khalouf to engage in banking and financial transactions for Husband and in his name, place, and stead. *Cf. Augustine*, 695 A.2d at 838 (set forth *supra* ).

¶ 13 As a result, we find this case distinguishable from the cases on which Khalouf relies. *Cf. Reifsneider, supra* at , 610 A.2d at 959 (daughters as attorneys-in-fact filed a notice of election to take against the will); *Taylor*, 652 A.2d at 913 (Vernon signed the deed for her father as grantor and as joint grantee pursuant to the power of attorney); *id.* at 915, discussing *Brenner v. Manmiller, supra* (pursuant to the

---

5. Khalouf claims that Husband waived this issue by not filing exceptions to the chancellor's ruling. (Appellant's reply brief at 7 n.6.) We do not find waiver, however. Based on the court's conclusion that Wife, through Khalouf, acted contrary to the known and probable intent of Husband when she removed the assets from the jointly held accounts, the chancellor did not address this issue. *See Princeton Sportswear Corp. v. H & M Associates*, 510 Pa. 189, 191, 507 A.2d 339, 340 (1986) (appellee's failure expressly to

raise issue in written exceptions to trial court's adjudication does not constitute a waiver of that issue where the issue was raised and exhaustively discussed before the trial court); *Jara v. Rexworks*, 718 A.2d 788, 792 (Pa.Super.1998) (where a party failed to file cautionary post-trial motions, court will not find waiver where that party, who subsequently became appellant, raised issue in Rule 1925(b) statement and trial court addressed issue), *appeal denied*, 558 Pa. 620, 737 A.2d 743 (1999).

power of attorney, Mrs. Manmiller began to conduct her grandfather-in-law's affairs).

¶ 14 Khalouf claims, however, that *Augustine, supra*, is distinguishable on several bases. First, evidence in *Augustine* established that the attorney-in-fact signed as attorney-in-fact all other documents she executed in that capacity, while the deed at issue did not so indicate. Additionally, the power of attorney in *Augustine* took effect only on the principal's incapacity, and the attorney-in-fact presented no evidence that she signed the deed after the principal's disability. Finally, the attorney-in-fact in *Augustine* did not at first claim that she relied on her power of attorney when she signed the deed. Instead, she first claimed her husband signed the undated deed transferring the property to himself and to her as tenants by the entireties.

¶ 15 While we agree with Khalouf that *Augustine* is distinguishable for the reasons stated, we do not find those distinctions controlling. Khalouf acted on instructions from Wife and under authority of Wife's power of attorney only. As a result, we find that Khalouf did not transfer the account assets out of the joint accounts on Husband's behalf pursuant to the authority granted to Wife in Husband's power of attorney. *Cf. Petro*, 694 A.2d at 633 (daughters provided banker with their father's executed power of attorney, and banker relied on provisions giving daughters the authority to sell, transfer, pledge, or exchange father's assets on his behalf; however banker did not rely on the provision authorizing daughters to make gifts and daughters never mentioned that their father had made gifts to them).

¶ 16 Furthermore, under the facts of this case, because Khalouf had no authority to transfer the assets on behalf of Husband, she did not transfer the assets with Husband's consent, as required by the Multiple Party Accounts Act ("MPAA"), §§ 6301–6306, and as a co-tenant by the entireties. Pursuant to the MPAA, "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent." 20 Pa.C.S.A. § 6303(a); *Wilhelm v. Wilhelm*, 441 Pa.Super. 230, 657 A.2d 34, 37 (1995). "Proof that a different intent existed and a gift was given is the burden of the party who is claiming to have received the benefit of that gift. Such proof must be established by clear, precise, direct and convincing evidence." *Id.*, citing *Lessner v. Rubinson*, 382 Pa.Super. 306, 555 A.2d 193 (1989) (other citation omitted), *affirmed*, 527 Pa. 393, 592 A.2d 678 (1991).

¶ 17 In this case, we find that Husband's act of restructuring the bank accounts as joint accounts in the name of Husband and Wife constitutes such clear and convincing evidence of a different intent: the intent to create estates by the entireties, which arises as a presumption at law. *See Constitution Bank v. Olson*, 423 Pa.Super. 134, 620 A.2d 1146, 1149 (1993) (an intention to create an entireties estate is assumed from the deposit of an asset in both the names of a husband and a wife, without more, and from the fact of a marital relationship) (citations omitted). We therefore disagree with the chancellor that Khalouf failed to rebut the statutory presumption contained in the MPAA by clear and convincing evidence.

¶ 18 Khalouf agrees that the joint accounts were entireties property; however, she argues that Husband's power of attorney is evidence of his consent to Wife's severing the entireties estates and appropriating the assets for her own use. (Khalouf's reply brief at 13.) We disagree, finding instead that Husband's power of attorney, executed in September 1993, was merely evidence of Husband's consent to Wife's acting on his behalf, including acting on his behalf to sever the entireties estates.

¶ 19 "A tenancy by the entireties is a form of co-ownership of real or

personal property by husband and wife, with its essential characteristic being that 'each spouse is seised per tout et non per my, i.e. of the whole or the entirety and not of a share, moiety or divisible part.' " *Fazekas v. Fazekas*, 737 A.2d 1262, 1264 (Pa.Super.1999), quoting *In re Gallagher's Estate*, 352 Pa. 476, 478, 43 A.2d 132, 133 (1945). "For the duration of the entireties estate, either spouse has the presumptive power to act for both, *so long as both spouses share the proceeds, and neither spouse may appropriate property for his or her own use, to the exclusion of the other spouse, without the consent of the other spouse.*" *Fazekas*, 737 A.2d at 1264 (emphasis added) (citations omitted); *Lapio v. Robbins*, 729 A.2d 1229, 1235 n. 10 (Pa.Super.1999). Furthermore, "severance of the entireties estate 'may be achieved only through divorce, a joint conveyance or mutual agreement, either express or implied; a tenancy by the entireties cannot be severed or conveyed away by the independent action of one spouse.' " *Fazekas*, 737 A.2d at 1264, quoting *Estate of Maljovec*, 412 Pa.Super. 80, 602 A.2d 1317, 1320 (1991). *See also In Re Holmes' Estate*, 414 Pa. 403, 405–407, 200 A.2d 745, 747–748 (1964) (jointly held stocks) ("It is fundamental that once an estate by the entireties existed, neither tenant could . . . terminate or sever by his or her own conveyance as a joint tenant can do, nor by his or her own act affect the other's right to survivorship"); *Stemniski v. Stemniski*, 403 Pa. 38, 169 A.2d 51 (1961) (jointly held bonds and savings accounts); *Berhalter v. Berhalter*, 315 Pa. 225, 173 A. 172 (1934) (jointly held savings accounts).

▆▆▆▆ ¶ 20 We have already found that Khalouf was not acting pursuant to Husband's power of attorney, or pursuant

to Wife's direction that Khalouf act on behalf of Husband, when she transferred assets out of the jointly held accounts. We must therefore also find that Khalouf was not acting pursuant to Husband's power of attorney or pursuant to Wife's direction that Khalouf act on behalf of Husband when she appropriated the account assets for Wife's sole benefit. As a result, we must conclude that Khalouf's act of transferring the account assets did not sever the entireties estates because it was not done with Husband's express consent.[6] It is true that at any time after September 1993, Wife could have withdrawn the funds and severed the entireties estates, acting pursuant to her power to act on behalf of Husband and, in this case, therefore acting with his express consent. In contrast, however, Khalouf, who could only act on behalf of Wife, could not act with Husband's express consent because she was not authorized to act on behalf of Husband.

¶ 21 Furthermore, we find that at the time Husband executed the power of attorney in September 1993, it did not disclose his present intent to sever the entireties estates in the jointly held accounts. This court has previously found that a deed of grant signed by Husband and Wife conveying real property is an example of an express agreement to sever an entireties estate. *Stop 35, Inc. v. Haines*, 374 Pa.Super. 604, 543 A.2d 1133, 1135 (1988), citing *In re Prichard*, 359 Pa. 315, 59 A.2d 101 (1948). The *Stop 35* court concluded, however, that an agreement to divide the proceeds from the sale of real property "When ever the property is sold" "did not disclose a present intent to sever the en-

---

**6.** Consent may be express or implied. *Fazekas*, 737 A.2d at 1264 (citations omitted). Although Khalouf does not argue the issue of implied consent, we note that without Husband's express consent, Wife required Husband's implied consent to sever the entireties estates. We find, however, that Husband's power of attorney is not evidence of Husband's implied consent as this court and our

supreme court have interpreted that term. *See Fazekas*, 737 A.2d at 1264–1265, discussing *Stemniski, supra* and *Berhalter, supra* (two elements are required for a court to find an implied mutual agreement to sever: a misappropriation by one spouse (the offer); and a suit for an accounting or other remedy by the other spouse *prior to death* (the acceptance)).

tireties estate in the marital home." *Stop 35*, 543 A.2d at 1136.

 ¶ 22 Likewise, we find that Husband's power of attorney, executed in September 1993, did not disclose a present intent to sever the entireties estates in the jointly held accounts and gift the proceeds to Wife. Husband's power of attorney is, like the agreement in *Stop 35*, at best an expression of intent that Wife, acting on behalf of Husband, may sever the estates at some time in the future. *See also Hera*, 625 A.2d at 686 (the prerequisite elements necessary to prove a gift are donative intent and delivery; actual or constructive delivery must not only divest the donor of all dominion and control over the property, but must also invest the donee with complete control over the subject matter of the gift) (citation omitted). Thus only someone acting on Husband's behalf in 1995 could have acted with Husband's present intent, hence his express consent, to sever the entireties estates.

¶ 23 In summary, we conclude that Wife's grant of power of attorney to Khalouf did not authorize Khalouf to act on behalf of Husband. We therefore conclude that Khalouf did not act pursuant to Husband's power of attorney when she transferred the assets out of the jointly held accounts. Likewise, we conclude that under the facts of this case, Husband's grant of power of attorney is not clear and convincing evidence of his present intent, and therefore his express consent, to sever the entireties estates. Khalouf has therefore failed to overcome both the statutory and common law presumptions that all of the assets in the jointly held accounts should have passed to the survivor of Husband and Wife, in this case, Husband. 20 Pa.C.S.A. § 6304. Because Wife, through Khalouf, misappropriated those funds prior to Husband's death, we affirm the chancellor's order that Khalouf surrender and deliver to Timothy G. Wojton as executor of Husband's estate the sum of $411,-880.85, including interest thereon. *See Fleetway Leasing Co. v. Wright*, 697 A.2d

1000, 1002 n. 2 (Pa.Super.1997) (this court may affirm a decision of the trial court for reasons other than those relied on by the trial court as long as the result is correct).

¶ 24 Affirmed.